## Cochran *v.* Fox Chase Bank, Appellant.

*Bonds—Coupon bonds—Stolen bonds—Pledge by thief—Bailment—Title.*

A bank to which stolen coupon bonds, payable to bearer, have been pledged as collateral security for a loan by the thief in the ordinary course of business, without notice to the bank of any infirmity in the title, and without any circumstances to put the bank on inquiry, takes a good title thereto as against him from whom they were stolen.

Argued March 24, 1904.   Appeal, No. 204, Jan. T., 1903, by defendant, from judgment of C. P. No. 3, Phila. Co., March T., 1902, No. 2989, on verdict for plaintiff, in case of Louisa T. Cochran v. The Fox Chase Bank.   Before DEAN, FELL, MESTREZAT, POTTER and THOMPSON, JJ.   Reversed.

Assumpsit for the alleged wrongful conversion of coupon bonds.   Before FINLETTER, P. J.

The facts appear by the opinion of the Supreme Court.

The court gave binding instructions for plaintiff.

Verdict and judgment for plaintiff for $3,806.   Defendant appealed.

*Error assigned* was in giving binding instructions for plaintiff.

*Edward W. Magill*, of *Alexander & Magill*, for appellant.— The courts of this state, in harmony with those of other American and English jurisdictions, uniformly hold that ordinary coupon bonds of incorporated companies, payable to bearer, are negotiable instruments, and, consequently, pass by manual transfer with or without assignment, and vest in the bona fide holder for value a good and valid title thereto : Beaver County v. Armstrong, 44 Pa. 63 ; Gibson v. Lenhart, 101 Pa. 522 ; Mason v. Frick, 105 Pa. 162 ; Carr v. LeFevre, 27 Pa. 413 ; Bunting v. Camden & Atlantic R. R. Co., 81 Pa. 254 ; Fox v. Iron Co., 17 Legal Int. 149.

It is likewise a well settled principle of commercial law that the bona fide holder or purchaser, for value, before maturity, in the ordinary course of business, of coupon bonds, payable to bearer, which have been stolen, takes a good and valid title

thereto and is protected even as against him from whom they were stolen: Mason v. Frick, 105 Pa. 162; Carpenter v. Rommel, 5 Phila. 34; Justice v. Stroup, 4 Phila. 346; Manhattan Savings Institution v. Nat. Exchange Bank, 170 N. Y. 58 (62 N. E. Repr. 1079); Ins. Co. v. Hachfield, 73 N. Y. 226; Seybel v. Bank, 54 N. Y. 288; Newton v. Porter, 69 N. Y. 133; Murray v. Lardner, 69 U. S. 110; Nesbit v. Riverside Independent District, 144 U. S. 610 (12 Sup. Ct. Repr. 746); Andes v. Ely, 158 U. S. 312 (15 Sup. Ct. Repr. 954); Provident Life & Trust Co. v. Mercer Co., 170 U. S. 593 (18 Sup. Ct. Repr. 788); McClure v. Oxford Twp., 94 U. S. 429; Wylie v. Missouri Pacific Ry. Co., 41 Fed. Repr. 623; Spooner v. Holmes, 102 Mass. 503; Com. v. Savings Bank, 98 Mass. 12.

The cases would seem to hold that even a suspicion of a defective title, or knowledge of circumstances which would excite such suspicion in the mind of a prudent man, or even a disregard of means of information, an examination of which would disclose a defective title, are not conclusive of bad faith in the transaction, and will not alone defeat title to negotiable coupon bonds: Seybel v. Bank, 54 N. Y. 288; Manhattan Savings Institution v. Nat. Exchange Bank, 170 N. Y. 58 (62 N. E. Repr. 1079); Wylie v. Ry., 41 Fed. Repr. 623; L. R. Magee v. Badger, 34 N. Y. 247; Welch v. Sage, 47 N. Y. 143.

The appellant would respectfully submit that the burden of proof in a case of this character is not only on him who attacks the validity of the title of the holder of negotiable coupon bonds to show the absence of good faith, but he must go further and show affirmatively the presence of bad faith in the transaction: Murray v. Lardner, 69 U. S. 110; Mason v. Frick, 105 Pa. 162; Carr v. LeFevre, 27 Pa. 413; Gibson v. Lenhart, 101 Pa. 522; McSparran v. Neeley, 91 Pa. 17; Carpenter v. Rommel, 5 Phila. 34; Commonwealth v. Pittsburg, 34 Pa. 496; Commissioners v. Bolles, 94 U. S. 104; Commissioners v. Clark, 94 U. S. 278; Munn v. McDonald, 10 Watts, 270; 1 Daniels on Negotiable Instruments, sec. 824.

When, on the face of a coupon bond or other negotiable instruments, absolute ownership appears in him who is in possession of it, and there is no evidence outside showing or tending to show actual or constructive notice that the ownership is in another, the party taking such negotiable instruments for

value and in the ordinary course of business, takes title thereto good as against the real owner, even though the negotiable instrument be lost or stolen, and where loss results the party who puts it in the power of another to deal with the instrument as his own must bear the consequences of his own negligence or carelessness : Manhattan Savings Institution v. Nat. Exchange Bank, 170 N. Y. 58 (62 N. E. Repr. 1079) ; Shattuck v. American Cement Co., 205 Pa. 197 ; Westinghouse v. German Nat. Bank, 196 Pa. 249 ; Aull v. Colket, 2 W. N. C. 322 ; Ryman v. Gerlach, 153 Pa. 197.

*Edmund Randall*, with him *James A. Flaherty* and *H. Gilbert Cassidy*, for appellee.—It is incumbent on the purchaser of the stolen securities to prove affirmatively that he took them in the usual course of business in good faith for a valuable consideration : Robinson v. Hodgson, 73 Pa. 202.

OPINION BY MR. JUSTICE DEAN, April 11, 1904 :

We are all of opinion this judgment must be reversed. However, the importance of the case to the parties and to many others in like business transactions as well as the judicial weight to which the opinion of the experienced judge who tried the issue is entitled, renders it proper for us to again put upon record our view of the law, a course we do not usually adopt when the case is clear and we are all of one mind.

The question involved is : " Whether or not a bank, to which stolen coupon bonds payable to bearer have been pledged as collateral security for a loan by the thief in the ordinary course of business, without notice to the bank of any infirmity in the title, and without any circumstances to put the bank on inquiry, takes a good title thereto as against him from whom they were stolen."

The Fox Chase Bank is a banking corporation, incorporated under the laws of the state of Pennsylvania, doing business at Fox Chase, a suburb of Philadelphia. On July 17, 1900, William A. Douglas opened an account with the bank. Douglas at this time was a reputable and respected resident of Fox Chase, well known to the officers of the bank. He held responsible and lucrative positions with reputable financial institutions of the city of Philadelphia, being assistant receiv-

ing teller of the Guarantee Title & Trust Company, and treasurer of the Chestnut Street Trust and Saving Fund Company. From the time of opening the account until November 21, 1901, his balances varied from several hundred to several thousand dollars. A few days prior to the last named date, Douglas applied to the cashier of the Fox Chase Bank for a loan of $2,500 on $4,400 of coupon bonds, payable to bearer, of the Wellsbach Light Company as collateral security. Mr. Pence, the cashier, regularly brought the matter to the attention of the board of directors, who, being satisfied with the responsibility of Douglas and the sufficiency of the collateral, directed the cashier to make the loan. Douglas's note for $2,500 was accordingly discounted, and the amount thereof less discount, to wit: $2,461.25, placed to his credit on March 21, 1901. This sum of money was subsequently drawn out of the bank by Douglas in the ordinary course of business and his account closed.

Some months after this transaction it was discovered, that Louisa T. Cochran, the plaintiff, had placed for safe-keeping with the Chestnut Street Trust Company certain shares of stock of the Wellsbach Light Company ; that Douglas had stolen this stock and exchanged it for these coupon bonds of the company and pledged them for the loan. He was prosecuted, convicted and sentenced to prison. On these facts the learned judge of the court below being of opinion the question was one purely of law for the court, peremptorily directed a verdict for plaintiff, and this appeal by defendant followed the judgment entered on the verdict.

These three facts are established by the evidence: 1. The bonds were stolen from the plaintiff; 2. They were transferred by the thief to the bank; 3. They were accepted by the bank in the ordinary course of business, in good faith without knowledge that they had been stolen.

The bonds were ordinary bonds payable to bearer with coupons attached. At a not very remote period in our judicial history such a bond would not have been considered negotiable, as a note or bill of exchange and the holder would have taken it subject to the burden if called upon, of proving his title to it as against one claiming to be the real owner; but at least as early as 1824 in Gorgier v. Mieville, 3 B. & C. 45,

such instruments were placed in England on the same plane as notes and bills of exchange and were held negotiable. The distinction between such a negotiable instrument and ordinary goods and chattels such as horses, pictures and the like is, that it is valuable only as entitling the holder to receive at some future time a certain sum of money, which is precisely the value of a note or bill of exchange. It is, of itself, neither useful nor valuable as other chattels, is but a representative of money and therefore subject to the same rules which regulate the transfer of money. A learned and conclusive discussion of the whole subject of the negotiability of such instruments by Justice READ of this court is given in County of Beaver v. Armstrong, 44 Pa. 63. He gives the history of the decisions both in England and this country, and shows conclusively, that by the settled law, such bonds are negotiable and that the title passes by delivery; there has not been the slightest departure since, at least in this state, from the law as announced in that case.

It is also settled that a bona fide holder of such an instrument for value before maturity, taken in the usual course of business, acquires a good title thereto, even as against him from whom it was stolen: 2 Cook on Corporations, page 1731, says, "A bona fide purchaser of a bond which has been stolen takes a good title." He gives ample authority in his notes supporting this text. Mason v. Frick, 105 Pa. 162, held to the same rule. In that case, like the one before us, the bond was that of a private corporation, payable to bearer; the plaintiff, Mason, kept it in his safe; the safe was broken open and the bond stolen; the thief transferred it to one Freeman, who knew when he took it that it had been stolen; Freeman pledged it as collateral security for a loan to Frick, the defendant, who took it in good faith. The rule that the bona fide holder of a stolen negotiable security is protected against a claim of the real owner was not even contested by the owner, but it was argued that the bond being that of a private corporation was not negotiable and that the holder took it subject to the equitable right of the real owner. It was held by this court that the law governing the case was that announced in County of Beaver v. Armstrong, supra, and that the bona fide holder was protected against the claim

of the real owner.    The same rule was held by Judge SHARS-
WOOD sitting in the district court of Philadelphia, Carpenter
v. Rommel, 5 Phila. 34, where the defendant had purchased at
the open board of brokers a lot of stolen negotiable railroad
bonds.

It is further argued by appellee that the circumstances here
proven show that defendant acted in bad faith when it took
the bonds and therefore is not a bona fide holder.    Good faith
is defined to be honesty of intention and freedom from knowl-
edge of circumstances which ought to put the holder upon in-
quiry.    The circumstances pointed to here as calculated to
arouse inquiry are the facts, that Douglas although reputable
was a young unmarried man living with his mother at the vil-
lage of Fox Chase, not engaged in large business ; that he
held a subordinate position as clerk in a trust company ; there-
fore it was improbable he would be the actual owner of this
amount of bonds.    The argument answers itself,—if he was a
reputable young man living inexpensively and without osten-
tation with his mother, the conclusion would be that he did
possess, from accumulations, securities worth $2,500, and that
if he occupied a position of responsibility in a large trust com-
pany, he was honest and worthy.    That he offered them in
pledge for a loan at a small village bank instead of to a larger
institution, only showed that like many others, especially those
of limited means, he preferred just that kind of business.    There
does not seem to us to be a single circumstance in the case or
anything in all of them together, which was calculated to
arouse suspicion or put the defendant upon inquiry.

Appellant's first assignment of error, that the court below
erred in directing a verdict for plaintiff, is sustained.    The
judgment is reversed and judgment entered for defendant.