# HONOLULU LODGE NO.' 1 MODERN ORDER OF PHOENIX *v.* TRENT ' TRUST COMPANY, LIMITED.

## No. 1140.

### EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT. HON. S. B. KEMP, JUDGE.

·SUBMITTED OCTOBER 3, 1919.          DECIDED OCTOBER 8, 1919.

### EDINGS, J., AND CIRCUIT JUDGES FRANKLIN AND DEBOLT IN PLACE OF COKE, C. J., ABSENT, AND KEMP, J., DISQUALIFIED.

CORPORATIONS—*bonds.*

A corporate bond payable to bearer and secured by a mortgage trust deed is a negotiable instrument.

NEGOTIABLE INSTRUMENTS.

A corporate bond payable to bearer and secured by ੨ mortgage trust deed is a negotiable instrument.

SAME—*theft—rights of true owner.*

A *bona fide* holder for value of a lost or stolen negotiable bond taken in the usual course of business acquires a good title thereto even as against him from whom it was stolen.

### OPINION OF THE COURT BY EDINGS, J.

This is an action in trover to recover the value of three first mortgage six per cent. twenty-year bonds, numbers 989, 990 and 991 of the Olaa Sugar Company, Limited, an Hawaiian corporation, alleged to have been wrongfully converted by the defendant.

Upon the trial (jury waived) the court granted a nonsuit upon the ground that the defendant was a holder in due course of negotiable instruments and had a right to the possession, and therefore not liable.

The case comes here on exception to the judgment of

nonsuit "as contrary to the law and the evidence." It appears that the plaintiff-appellant was the outgrowth of an organization previously known as Honolulu Lodge No. 800 Loyal Order of Moose of the World. In this body two factions were created by reason of intestine disturbance and one faction was eventually granted a charter of incorporation by the Territory of Hawaii under the name of Honolulu Lodge No. 800 Loyal Order of Moose of the World; that on the 15th day of January, 1915, an amendment of the charter of incorporation was granted by which the name was changed to Honolulu Lodge No. 1 Modern Order of Phoenix; that at the time of the incorporation of the plaintiff-appellant it was the alleged owner and in possession of the bonds in question and their custody reposed in a board of trustees consisting of three persons, one of whom was treasurer; that the treasurer had physical possession of the bonds; that in May, 1914, the treasurer, William Armstrong, feloniously converted said bonds and placed them for sale with the defendant-appellee, who during the same month sold them for $1921.50, and delivered the proceeds, less commissions, to Armstrong; that plaintiff-appellant never received the proceeds of the sale of these bonds; that the bonds were first mortgage coupon bonds of the denomination of $1000 payable to bearer twenty years after date, with interest, from date until maturity at the rate of six per cent. per annum, payable semi-annually.

The plaintiff-appellant asserts "that the bonds in question were non-negotiable choses in action to which the defendant could not acquire any title from the party embezzling the same, and the rightful owner can hold the defendant liable for damages that it has suffered by reason of defendant's participation in the wrongful conversion thereof;" that the bonds "show on their face that

they are secured by a mortgage deed of trust to the Bishop Trust Company, Limited, and together constitute one transaction, and by its terms is expressly made subject to all of the provisions of said mortgage deed of trust;" that the bonds "do not contain an 'unconditional promise or order to pay a sum certain in money' to qualify them as negotiable instruments under the provisions of section 3451 of the R. L. of H. 1915, for the reasons, first, that they contain an order or promise to pay out of a particular fund, which disqualifies them as negotiable instruments under the provisions of section 3453 of the R. L. of H. 1915; second, payment is ratable; and, third, the time of payment upon default may be waived at the option of the trustee or by requisition of a majority of the bond holders;" that the bonds "do not contain an unconditional promise or order to pay a 'sum certain in money' as provided by section 3451 R. L. H. 1915, for the reasons, first, payment is ratable; second, payment is to be made out of a particular fund; third, discharge, upon requisition of 3/4 of the bond holders, by payment in shares, stocks, indenture or mortgage; and, fourth, discharge, with consent of a majority of bond holders by purchase of property for amount of outstanding bonds."

The trust company never had any notice that Armstrong was not the owner of the bonds or any knowledge that the same had been stolen until long after it had sold them.

The bonds in question were secured by the usual mortgage trust deed employed in transactions of this nature, which deed does not contain any stipulations or conditions inconsistent with or repugnant to the terms of the bonds. They are a type of bond in common commercial use, considered by the business world as negotiable instruments and have been held so to be by the courts, and

to hold them other than negotiable instruments would spread consternation, disaster and distress in financial circles generally.

In discussing the negotiability of corporate bonds such as those in question it is said:

"These instruments are a modern financial invention. They are as is well known issued by the United States government, by the governments of the several states, by the governments of the territories, as well as by municipal corporations, and railway, canal, steamboat, mining, manufacturing, and other incorporated companies. Such bonds, whether the coupons are attached or detached, are, when they employ negotiable words, as when they are made payable to the bearer, the holder, or to order almost universally held to be negotiable instruments, possessing the ordinary incidents of such instruments, although they may be issued under seal. This is true of corporate bonds which have been indorsed by the state. It is especially true where the law of the state under whose laws they are issued has abolished the use of private seals." 10 Cyc. 1172.

"Bonds with coupons, payable to bearer, are negotiable securities, and pass by delivery, and, in fact, have all the qualities and incidents of commercial paper." *Thompson* v. *Lee County*, 3 Wall. (U. S.) 327, 331.

"That these securities (bonds) are treated as negotiable by the commercial usages of the whole civilized world, and have received the sanction of judicial recognition, not only in this court (see *White* v. *Vermont Railroad Co.* 21 How. 575) but of nearly every State in the Union, is well known and admitted." *County of Mercer* v. *Hacket*, 1 Wall. (U. S.) 83, 95.

"3. That the bonds were not negotiable. This objection is also unsound. The bonds were payable 'to the bearer, or, when registered, to the registered owner thereof;' were declared to be due on or before December 1, 1901, and were redeemable by annual drawings conducted under the supervision of the Trust Company. It was not known which bonds it would redeem in any one year, as this was to be determined by drawings; but

its promise was to redeem all of them before December 1, 1901. Considering the nature of corporate bonds, and the difficulty of redeeming so large a number and amount upon any one day, we do not think the fact that they were redeemable by instalments, determined by drawings, impaired their negotiability. Promissory notes much more indefinite as to their time and payment have been held to be negotiable. *Stevens* v. *Blunt,* 7 Mass. 240; *Goodloe* v. *Taylor,* 3 Hawks, 458; *Cota* v. *Buck,* 7 Metc. 588; and in *Goshen Etc. Turnpike Road* v. *Hurtin,* 9 Johns. 217, it was held directly 'that a promise in writing to pay a certain sum' in such manner and proportion, and at such time and place, as he shall from time to time require, is a promissory note.

"It is at least doubtful whether the fact that these bonds were or were not negotiable is a material one; but assuming it to be such, we think they were negotiable within the meaning of the law." *Dickerman* v. *Northern Trust Co.,* 176 U. S. 181, 194.

"A municipal bond, issued under the authority of law, for the payment, at all events, to a named person or order, a fixed sum of money, at a designated time therein limited, being indorsed in blank, is a negotiable security within the law merchant.

"Its negotiability is not affected by a provision of the statute under which it was issued that it should be 'payable at the pleasure of the district at any time before due.'" *Ackley School District* v. *Hall,* 113 U. S. 135.

"A coupon accompanying a corporate bond, which contains an express promise that the corporation will pay the bearer a stated sum as interest at a stated bank on a certain day, and is signed by the treasurer of the corporation, is a negotiable instrument." *Fox* v. *Hartford & W. H. H. R. Co.,* 38 Atl. (Conn.) 871.

These bonds are a general pledge of the corporation's credit and payment of the same is restricted to the so-called sinking fund but can be enforced against all assets of the corporation.

The bond provides that the Olaa Sugar Company, Limited, "For value received promises to pay to the

bearer hereof One Thousand Dollars ($1000) * * *
twenty (20) years from the date hereof." There is no
condition as to what fund the bond shall be paid out of.
It is a general and unqualified promise to pay.

We are clearly of the opinion that the bonds are ne-
gotiable instruments. To hold otherwise, as said by Mr.
Justice Field in *Cromwell* v. *County of Sac*, 96 U. S.
51, "would throw discredit upon a large class of securi-
ties issued by municipal and private corporations." And
these bonds being negotiable, it follows therefore that the
defendant-appellee had the right to accept them for sale
and to sell them.

"One who had stolen coupon bonds payable to bearer
pledged the same to a bank in the ordinary course of
business, without any circumstances placing the bank on
inquiry. *Held*, that the bank took a good title thereto as
against the true owner." *Cochran* v. *Fox Chase Bank*,
58 Atl. 117.

A *bona fide* holder for value, of a lost or stolen nego-
tiable bond taken in the usual course of business ac-
quires a good title thereto, even as against him from
whom it was stolen. 9 C. J. 63; *Shaw* v. *Merchants'
Nat. Bank of St. Louis*, 101 U. S. 557.

The exception is overruled.

*Peters & Smith* for plaintiff.

*Thompson & Cathcart* for defendant.