# Miles *v.* Centennial National Bank, Appellant.

*Banks—Negotiable bonds held as collateral—Pledgor and pledgee—Conversion by pledgor—Liability of bank to owner—Brokers—Holder in due course—Case stated.*

In a case stated to determine whether the defendant bank properly retained proceeds realized on the sale of Liberty bonds belonging to plaintiff, but wrongly pledged by plaintiff's broker, it appeared that the bonds were negotiable by delivery. It also appeared that the bonds were in the custody of the broker to be sold, and that the broker pledged the bonds, together with other security, as collateral for a loan, and also to secure payment of prior loans. The broker became a bankrupt and defendant sold the bonds pursuant to the pledge agreement.

Under such circumstances the defendant bank properly applied the proceeds derived from the sale of the bonds to the payment of various unpaid loans.

In such case the bank was the holder in due course, there being no mala fides on its part in taking or dealing with the bonds.

Argued October 21, 1926. Appeal No. 229, October T., 1926, by defendant from judgment of C. P. No. 1 Philadelphia County, December T., 1924, No. 13415, in the case of Thomas H. Miles v. Centennial National

Bank.   Before Porter, P. J., Henderson, Trexler, Keller, Linn, Gawthrop and Cunningham, JJ.   Reversed.

Case stated to determine whether the defendant bank properly retained the proceeds realized on the sale of Liberty bonds belonging to plaintiff, but wrongly pledged by a broker.   Before Bartlett, P. J.

The facts appear in the case stated which is as follows:

And now, May 17, 1926, it is hereby agreed by and between the parties to the above suit that the following case be stated for the opinion of the Court in the nature of a special verdict:

On February 3, 1922, Thomas H. Miles purchased on margin from Geo. W. Kendrick, 3rd & Co., a $5,000 Shreveport-El-Dorado Pipe Line Company 8 per cent. bond, due February, 1924, for the price of $4,968.89. This bond was to be delivered after March 1, 1922, and the purchaser was to receive as a bonus 25 shares of Shreveport stock.

On February 3, 1922, Thomas H. Miles brought in to Geo. W. Kendrick, 3rd & Co., a $5,000 U. S. Liberty 4¼ per cent. bond, with instructions that $2,000 of said bonds were to be sold and applied towards the purchase of the said Shreveport bond and the remaining $3,000 of U. S. Liberty bonds were to be returned to him.   On February 6, 1922, the $5,000 U. S. Liberty bond was taken to the Commercial Trust Company and exchanged for five $1,000 bonds.   Two of these bonds were sold at 97, or a price of $1,965.50, leaving a debit balance of $3,003.39 on account of the purchase price of the $5,000 Shreveport-El-Dorado bonds.   The remaining three bonds, numbered B-01130022 and H-01070518-9 were held by Geo. W. Kendrick, 3rd & Co., for safe keeping.

Subsequently, Thomas H. Miles gave instructions to sell the remaining $3,000 U. S. Liberty 4th 4¼s so that he might take up the whole $5,000 Shreveport-El-Dorado bonds, upon which there was still a balance due of $3,003.39, as aforesaid. Instead of selling, Geo. W. Kendrick, 3rd & Co., without notice to Thomas H. Miles, re-hypothecated the said $3,000 U. S. Liberty bonds on February 28, 1922, in the H. C. Dingee, Jr., loan at the Centennial National Bank, which loan was made to Geo. W. Kendrick, 3rd & Co. on said date.

At the time of the assignment of Geo. W. Kendrick, 3rd & Co. (hereinafter called "Kendrick") which was on March 3, 1922, that firm had six loans with the Centennial National Bank, of which the following three showed a credit balance respectively upon liquidation, viz:

A. C. H. Clark, 3rd, loan made July 30, 1920, for $25,000 and reduced to $20,000 by the time of the assignment, which showed a credit balance of $376.72.

B. H. C. Dingee loan made February 28, 1922, for $25,000, which showed a credit balance of $2,539.01.

C. Geo. W. Kendrick, 3rd, loan made January 16, 1920, for $75,000 and reduced to $36,000 by the time of the assignment, which showed a credit balance of $4,262.31.

The other three loans above referred to, which upon liquidation showed a deficit, were as follows:

D. William Lilley loan made January 15, 1920, for $25,000 and reduced to $18,500 by the time of the assignment, which showed a deficit of $778.70.

E. C. H. Clark, 3rd, loan for $14,500. This loan consisted of advances totaling $14,500 made to

C. H. Clark, 3rd, personally between February 21, 1916, and June 19, 1918, prior to the formation of the firm of Geo. W. Kendrick, 3rd & Co. On May 21, 1920, C. H. Clark, 3rd, then a member of the Kendrick firm, signed a collateral agreement in the form hereinafter referred to, and deposited certain firm securities as collateral for said loan in substitution of the collateral which at that time secured said loan.

F. Draft loan made on March 1, 1922, for $25,237.-50, which showed a deficit of $3,555.44.

The $3,000 U. S. Liberties were sold in the liquidation of the H. C. Dingee loan (above referred to as loan "B") by the Centennial National Bank at the price of $2,968.97. This loan showed a credit balance of $2,539.01 of which $1,974.57 was prior to April 20, 1922, transferred by the Centennial National Bank to the C. H. Clark loan (above designated as loan "A"), although upon the ultimate sale of the securities in said loan "A" there was a credit balance in said loan of $376.72, as is hereinabove stated. The said bank subsequently to the failure had not sold all of the securities in said loan "A," and, therefore, prior to April 20, 1922, applied said sum of $1,974.57 from the Dingee loan (loan "B") to make up the deficit then existing in said loan "A." Upon the ultimate sale of the securities in said loan "A," therefore, the total equity therein consisted of said $376.72 plus said $1,974.57 thus applied from said Dingee loan (loan "B") or a total of $2,351.29.

Said equity of $2,351.29 thus remaining in said loan "A" was thereupon the 15th day of June, 1922, applied by said bank to the liquidation of the deficit in the C. H. Clark loan for $14,500 (above designated as loan "E.") Upon the application of said $2,351.29 to said

loan "E" and upon the ultimate sale of the securities pledged in said loan ("E") there remained an equity in the said loan "E" of $390.82. Said equity of $390.82 was thereafter applied by said Centennial National Bank, together with certain other funds hereinafter referred to, to the payment of certain bills owing by Kendrick to said bank.

The balance of the above mentioned equity in the Dingee loan (loan "B") remaining after the above mentioned application by the bank of said $1,974.57 as above set forth, to wit: $564.44 was applied on the 20th day of April, 1922, by said bank to make up the deficit in said draft loan (hereinabove referred to as loan "F"). Said loan "F" showed a deficit upon liquidation.

The Geo. W. Kendrick, 3rd loan for $36,000 (hereinabove designated as loan "C") made January 16, 1920, upon liquidation on the 15th day of June, 1922, showed an equity of $1,274.31 cash and 300 shares of Huntingdon D. & G. common. The said cash was on the 29th day of January, 1923, transferred by said bank to the William Lilley loan (hereinabove designated loan "D"), which loan, thus augmented by said sum of $1,274.31 upon liquidation, showed an equity of $495.61. Said sum of $495.61 was applied by said Centennial National Bank together with said equity of $390.82 in said loan "E" to the payment of certain bills owing by Kendrick to said bank, as has been hereinabove set forth, and after the payment of said bills there was a balance of cash of $224.43 which was returned by said bank to the assignee, together with the said 300 shares of Huntingdon D. & G. common remaining in said loan "C." Assignee subsequently sold the said 300 shares of Huntingdon D. & G. common for $2,988, so that the net equity returned by said Centennial National Bank to the assignee upon the liquidation of all the Kendrick loans at said bank was $3,212.43.

At the time of making the various loans hereinabove referred to the Centennial National Bank procured from the borrower an agreement authorizing the bank to apply any collateral then or thereafter deposited by the borrower with said bank, and giving the bank a lien upon all property of the borrower theretofore or thereafter left with said bank for safe keeping or otherwise, for the payment of any indebtedness present, past or future to said bank by said borrower.

In the H. C. Dingee loan (loan "B") there were two customers of Geo. W. Kendrick, 3rd & Co., whose securities were tortiously re-hypothecated, namely; Miss Florence B. Scott and Mr. Thomas H. Miles. Miss Scott's securities sold in liquidation of said loan for $3,515.11, and Mr. Miles' securities sold for $2,968.97.

The Centennial National Bank received notice on the 13th day of May, 1922, that the Liberty bonds pledged as collateral to the Dingee note (loan B. supra) belonged to Thomas H. Miles and that he would look to it for the said bonds or their proceeds.

In the Geo. W. Kendrick, 3rd, loan (loan "C") there are also two customers whose securities were tortiously re-hypothecated in said loan, namely, John C. Groome and D. W. Myers. The securities of these customers sold for $20,700 in the liquidation of the loan.

The plaintiff contends that the credit balance in the loan of $25,000 of February 28, 1922, to Kendrick & Co. amounting to $2,539.01, is the property of the plaintiff and said Florence B. Scott in the proportions in which the proceeds of the sales of their securities, pledged for that loan, contributed to it. The proceeds of the sale of plaintiff's bonds amounted to $2,968.97 and of the sale of the Scott bonds or securities to $3,515.11.

The plaintiff also contends that the said Florence B. Scott owned 3,515.11/6484.08 of $2,539.01 and the plain-

tiff owns 2,968.97/6484.08 of $2,539.01 which is $1,162.26.

If the Court be of opinion that the plaintiff is entitled to judgment on the above statement of facts then judgment is to be entered by the Court for the plaintiff in the sum of $1,162.26, with interest from April 20, 1922. But if the plaintiff is not entitled to judgment then judgment to be entered for the defendant. The costs to follow the judgment and either party reserving the right to sue out a writ of error therein.

Judgment for plaintiff in the sum of $1454.18. Defendant appealed.

*Errors assigned,* were to the findings and judgment of the Court.

*Effingham B. Morris, Jr.,* of *Barnes, Biddle and Morris,* for appellant.—The bank was a purchaser for value: Raken v. Henry, 16 D. R. 207; First National Bank of Greencastle v. Baer et al., 277 Pa. 184; Trust Co. of St. Louis v. Markee, 179 Fed. 764; Railroad Company v. Bank, 102 U. S. 14, 26 L. ed. 61.

*Dimner Beeber,* and with him *Harry J. Alker, Jr.,* for appellee.

OPINION BY LINN, J., March 3, 1927:
This appeal is from judgment on a case stated (which will appear in the reporter's statement). It was brought to ascertain whether defendant bank can retain the proceeds realized on the sale of collateral belonging to plaintiff but wrongfully pledged by a borrower. The court below held that the plaintiff was entitled to recover part of the proceeds. Defendant appealed.

348 MILES *v.* CENTENNIAL NAT'L. BANK, Appel.

Opinion of the Court.     [90 Pa. Superior Ct.

Kendrick & Company, brokers, borrowed $25,000 from defendant on February 28, 1922, on their collateral note. Among the collateral were three $1,000 Liberty bonds which belonged to plaintiff but had been in the custody of the brokers to be sold. Not only was the collateral deposited as security for the repayment of the loan of February 28th, but it was deposited as security for the repayment of prior loans then existing and any that might be made subsequently. The brokers were then indebted to defendant on four other collateral loans; on March 1, an additional loan was made. On March 3, 1922, the brokers failed and winding-up proceedings followed. On May 13, 1922, defendant received notice of plaintiff's claim to the three bonds. Prior to that date, however, defendant had sold the bonds with other collateral, pursuant to the terms of the collateral agreement. The sale of the collateral deposited as security for the loan of February realized more than was sufficient to repay the loan; the excess was accordingly credited to earlier loans. When the collateral securing those loans was all converted, the excess, including part of the proceeds of plaintiff's bonds, was credited to the last loan.

The learned court below concluded that plaintiff was entitled to the excess of the proceeds of the collateral deposited to secure the loan of February 28th, (sharing with another person whose bonds had likewise been wrongfully pledged). This result seems to have been reached on the ground, as stated, by the court, that "there is nothing in the case stated which shows loan [of February 28th] was granted upon the faith or understanding that said loan would not be granted unless all the collateral pledged therein should be held for all past or future indebtedness of Kendrick & Company or that it was upon that condition alone such loan was made. The loan was the ordinary one with collateral therefor." Accordingly, the court held that

"the bank is not a purchaser for real value as against the real owner, except insofar as this particular loan to which the collateral attached... ..." The law is otherwise. In short, the transaction was as follows: the brokers were indebted to defendant on loans and desired another. They applied for a loan of $25,000 and offered their promissory note and certain collateral (including plaintiff's bonds), agreeing that if the loan was made, the collateral then to be delivered should be held by the bank as security for the repayment of that loan and of prior loans and for any subsequent loans that might be made to the borrower. Defendant accepted that proposal. By making the loan, the bank got the security of that collateral for all the loans because that was the contract; the promise of the borrower was not that the collateral offered should go for repayment, of that $25,000 loan only, if granted, but of all the then existing and any subsequent indebtedness. The value given by the bank in making the loan purchased security for the entire indebtedness; the bank was not bound to make the loan, but, doing so, it parted with something for which it received the borrower's pledge securing all the indebtedness described. As the bank has not applied the collateral otherwise than in accordance with the contract, there is no legal ground on which it can now be deprived of the benefit of security so obtained.

Plaintiff's bonds were negotiable instruments; they passed by delivery; apparently the broker's title to the bonds was not defective; there was no mala fides on the part of the bank in taking or dealing with them; it was a holder in due course: Dengler v. Paul, 83 Pa. Superior Ct. 37, 40; Mason v. Frick, 105 Pa. 162, 167; Ryman v. Gerlach, 153 Pa. 197; Cochran v. Fox Chase Bank, 209 Pa. 34; King v. Mellon Nat. Bank, 227 Pa. 22, 27; Oleon v. Rosenbloom, 247 Pa. 250.

To appellee's contentions (1) that the "extent of

plaintiff's loss must be measured by the extent to which the value of his bonds contributed to the liquidation of the loan made upon the faith of the delivery to the defendant of his bonds," and (2) that as the prior loans were not made for this collateral, the bank is not entitled to apply the overplus to prior loans, the answer is that the bank parted with its $25,000 in exchange for the promise that the brokers' entire indebtedness should be secured by these bonds.  Appellee further contends that as the case states that the bank was authorized "to apply any collateral then or thereafter deposited by the borrower with said bank and giving the bank a lien on *all property of the borrower* theretofore and thereafter left with said bank for safekeeping, or otherwise, for the payment of any indebtedness present, past or future, to the bank by the brokers," the bank was not permitted to use the proceeds of these bonds because they were not the *property of the borrower* but the property of the plaintiff.  This contention disregards the transaction which was that these bonds were specifically pledged by one having lawful possession for a present consideration as already described.  The precedents cited require that the judgment be reversed.

Judgment reversed and here entered for defendant.