## RODI BOAT COMPANY

v.

## PROVIDENT TRADESMENS BANK & TRUST COMPANY.

### Civ. A. No. 31100.

United States District Court
E. D. Pennsylvania.

Jan. 8, 1964.

Owen B. Rhoads, Arthur W. Leibold, Jr., Dechert, Price & Rhoads, Philadelphia, Pa., for plaintiff.

Richardson Blair and Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., for defendant.

**936**

KIRKPATRICK, District Judge.

■ It is no longer open to question that in Pennsylvania a bank has no right to set off identifiable funds of a third party in a depositor's account against a debt due it by the depositor. This is true even though the bank has no notice of any third party's interest in the debtor's account. Middle Atlantic Credit Corp. v. First Pennsylvania Banking and Trust Company, 199 Pa.Super. 456, 185 A.2d 818.

The evidence before the Court on this motion for summary judgment shows that:

At all times from October 23, 1961, to and including November 8, 1961, William Stuempfig was indebted to the defendant Bank in an amount of $56,250—an amount which did not vary during that period.

On October 24, 1961, Stuempfig received some $60,000. from the sale of a Chris Craft boat which he had purchased from the plaintiff about a year earlier. When be bought the boat, he made a down payment and executed a "retail installment contract," agreeing to pay the plaintiff the balance, $52,028.24, in 36 monthly payments. As of October 23, 1961, $36,132.67 was still owing to the plaintiff. The contract provided that the boat should remain the personal property of the seller or its assigns until the balance was paid in full.

Stuempfig's sale of the boat was without permission from the plaintiff or from the discount company which had financed the transaction, and neither company has assented to nor ratified it.

From the proceeds of the sale Stuempfig deposited $29,500.00 on October 24 and $29,682.00 on November 1 in an account in the defendant Bank carried by him under the name of "W. Stuempfig and Co. Management Account." W. Stuempfig and Co. was simply a fictitious name under which William Stuempfig carried on his real estate management business.

On November 9, 1961, the Bank set off the sum of $43,313.04 in the Management Account identifiable as part of the proceeds of the boat against obligations of Stuempfig and W. Stuempfig and Co. held by it.

In this suit the plaintiff asks judgment against the Bank for $36,132.67, being the amount due it from Stuempfig on the boat.

The facts recited above are uncontroverted and are all the facts material to the decision of this motion.

The record contains a great deal of evidentiary matter which may have some value as furnishing a background for the transactions involved but which does not affect the issue before the Court. The following conclusions as to its immateriality are set out in order to deal with a number of contentions advanced by counsel.

Specifically, it is immaterial:

(1) That Stuempfig had another account with the Bank, carried in his individual name, and that it and the Stuempfig and Co. Management Account were used indiscriminately by him for general business and personal purposes.

(2) It is uncontroverted, but also immaterial, that the Bank, before it exercised its claimed right of set-off, was aware that the monies deposited by Stuempfig on October 24 and November 1 were the proceeds of the sale of the boat and that the boat was subject to a conditional sales contract.

(3) That neither Stuempfig nor the Bank intended to establish any trust in favor of the plaintiff in the deposits made of the proceeds of the boat.

(4) That the boat had never been kept at Stuempfig's Philadelphia address or that it was in Maryland when Stuempfig sold it. It does not appear whether or not the boat was in Broward County, Florida, when the retail installment contract was recorded there, but its whereabouts at that time is immaterial.

■ (5) That the plaintiff did not comply with the provisions of the Uniform Commercial Code, 12A P.S. § 9–401 et seq., in respect of filing a financing statement in Pennsylvania in connection

with its sale of the boat to Stuempfig. The filing provisions of the Code simply provide a system of notice of a reservation of title to purchasers, creditors, and others. They do not affect any rights or obligations as between seller and buyer and noncompliance with them does not, as between those parties, divest the seller's reserved title and vest it in the buyer.

## Discussion

Stuempfig's sale and delivery of the boat to the man who bought it from him was a conversion of it. As a result, the proceeds of the sale, when received by him and deposited in his account in the Bank, were impressed with a constructive trust in favor of the plaintiff who had retained title to the boat. "A constructive trust has been defined to be 'a relationship with respect to property subjecting the person by whom the title to the property is held to an equitable duty to convey it to another on the ground that his acquisition or retention of the property is wrongful and that he would be unjustly enriched if he were permitted to retain the property * * * a constructive trust is imposed not to effectuate intention but to redress wrong or unjust enrichment. * * *' Restatement of the Law of Trusts, Vol. 1, p. 5, Chap. 1, section 1(e)." Philadelphia v. Heinel Motors, Inc., 142 Pa.Super. 493, 502–503, 16 A.2d 761, 765.

At the time the Bank exercised its claimed right of set-off the sum of $36,132.67 of the proceeds of Stuempfig's sale of the boat was still in his Management Account and identifiable as such. "Once the proceeds (resulting from the conversion of property) have been traced into some fund, the entire fund is subject to the trust until the amount wrongfully placed in it has been repaid * * *." Mehler's Appeal, 310 Pa. 25, 29, 164 A. 619, 620. At no time between November 1, the date of the last deposit of the boat's proceeds, and November 9, the date of the set-off, had the Stuempfig account been reduced by withdrawals below $36,132.67. The person in whose favor a constructive trust has arisen is in equity the owner of the trust property, regardless of the form it has taken, provided it can be traced and identified. Thus, when the defendant Bank, through the medium of a set-off, applied the money due to the plaintiff by Stuempfig in the Management Account to the payment of his indebtedness to it, it appropriated property of a third person with whom it had had no dealings. This the Bank could not lawfully do and, consequently, it is bound to surrender the money to the plaintiff.

The defendant takes the position in its brief that the plaintiff "has certainly waived its rights under the contract and cannot now assert its violation against Mr. Stuempfig's other creditors."

The fact is that, whatever rights, if any, the plaintiff may have lost through failing to file a financing statement, it did not lose title to the boat as between it and Stuempfig. It is not questioned that in most jurisdictions, including Pennsylvania, failure to comply with the requirements of the recording statutes makes a conditional sale absolute and the reservation of title invalid *as to the persons protected by the statutes.* Such persons are bona fide purchasers, creditors who have extended credit to the buyer in reliance upon his possession of the collateral, and the like, but the Bank in this case is not such a party. It had not extended credit to Stuempfig in reliance upon his possession of the boat. Nor had it extended any credit at all to him after his account had been augmented by his deposit in it of the proceeds of the boat. This plaintiff's case does not depend upon its standing as a general creditor in competition with other general creditors. Its right is not created by statute nor by agreement to make a trust but is grounded upon an equitable title to money in the Bank's hands, arising entirely in invitum by operation of law through the device of a constructive trust.

An order for judgment in favor of the plaintiff may be presented.