628 A.2d 1172

E.F. HOUGHTON & CO. and Efhco, Inc., Appellants,

v.

Jane DOE and Timothy Burno.

E.F. HOUGHTON & CO. and EFHCO, Inc., Appellants,

v.

MELLON BANK (EAST), N.A., Successor to Girard Bank.

E.F. HOUGHTON & CO. and Efhco, Inc., Appellants,

v.

DELAWARE MANAGEMENT CO., INC. Delaware Cash Reserve, Inc. and Delaware Cash Reserve.

Superior Court of Pennsylvania.

Argued March 4, 1993.

Filed July 27, 1993.

Annetta F. Givhan, Philadelphia, for appellants.

Fred T. Magaziner, Philadelphia, for Mellon Bank, appellee.

Before CAVANAUGH, BECK and HUDOCK, JJ.

BECK, Judge:

In this appeal we decide the nature of the notice that must be given to a bank by a third party under Section 606 of the Banking Code in order for the third party to assert successfully a claim to funds in a depositor's account superior to that of the depositor or the bank itself.

The relevant facts in this case are undisputed. In February 1982, Timothy Burno, an investment clerk employed by appellant E.F. Houghton & Co. ("Houghton"), stole over $1,000,000 in United States Treasury notes from Houghton. The funds eventually were deposited into two accounts at appellee Mellon (then Girard) Bank, in the name of Burno and his wife.[1] On the strength of these funds as collateral, Mellon approved a $150,000 loan to the Burnos. The loan agreement provided that, in the event of default, the bank was entitled to withdraw $150,000 plus accrued interest from the Burnos' accounts to pay the debt.

Some months later, Houghton discovered the theft, and obtained a judgment against the Burnos. On July 8, 1982, Houghton notified Mellon of the Burno theft and asked the bank to freeze the funds in the accounts. Mellon refused to freeze the funds before receiving a court order to do so. Before receiving a writ of attachment on July 9, 1982, Mellon caused $151,481.88 to be withdrawn from the larger of the Burnos' accounts, representing the principal and interest of its

1. In its opinion, the trial court described the theft. Mr. Burno instructed Houghton's investment broker to liquidate $1,000,000 of the company's United States treasury notes, and to transfer the proceeds to a money market account at Delaware Cash Reserve. Burno's wife opened the money market account the same day, under the name of a nonexistent individual, "E.F. Houghton." Delaware Cash Reserve disregarded the instructions of Houghton's broker's bank, which were to credit a corporate account of "E.F. Houghton & Co." with the proceeds of the sale, and instead credited the personal money market account opened by Mrs. Burno with $1,017,254.52. The Burnos then presented Mellon with a draft for $1.018 million drawn on a Delaware Cash Reserve account bearing a signature in the name of "E.F. Houghton." The draft was payable to Mellon and was deposited into two time-deposit accounts in the name of Timothy and Deborah Burno. The Burnos placed $1,000,000 in one account and $18,000 in the other. Trial Court Opinion at 1-2. The Burnos eventually pled guilty to federal criminal charges arising from the theft.

loan.[2]   Mellon then paid to Houghton the remaining $916,-304.50 which was in the accounts at the time the writ of attachment was served, plus interest.

Houghton instituted this action to recover the funds that were withdrawn by Mellon.[3]   The trial court granted Mellon's motion for summary judgment, and Houghton filed this timely appeal.

Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law.   Pa.R.Civ.P. 1035(b).   We note that the material facts are not in dispute, and this case therefore was ripe for summary judgment.   We agree with the trial court that Mellon is entitled to judgment as a matter of law, and affirm.

In defense of its actions Mellon cites Section 606 of the Banking Code which provides in pertinent part:

(a) An institution shall not be required, in the absence of a court order or indemnity required by this section, to recognize any claim to, or any claim of authority to exercise control over, a deposit account or property held in a safe-deposit.... made by a person or persons other than:

(i) The customer in whose name the account or property is held by the institution....

(b) To require an institution to recognize an adverse claim to, or any claim of authority to control, a deposit account or property held in a safe-deposit, whoever makes the claim must either:

**2.**   There apparently is no dispute that the Burnos' loan was in default and that one of the remedies available to the bank under the loan documents was a set-off against the deposit accounts.

**3.**   In fact, Houghton instituted several actions to recover the funds:  one against the Burnos, in which Houghton obtained a judgment and served a writ of attachment on Mellon as garnishee;  one against Delaware Cash Reserve for its mishandling of Houghton's funds;  and one directly against Mellon.   The three actions were consolidated below.

(i) Obtain and serve on the institution an appropriate order directed to the institution by a court restraining any action with respect to the account or property until further order of such court or instructing the institution to pay the balance of the account or deliver the property, in whole or in part, as provided by the order, or

(ii) Deliver to the institution a bond, in form and amount and with sureties satisfactory to the institution, indemnifying the institution against any liability, loss or expense which it might incur because of its recognition of the adverse claim....

7 Pa.S.A. § 606. We agree with the trial court's conclusion that § 606 justified Mellon's actions in this case.

■ Mellon received the required legal notice of Houghton's adverse claim against the Burnos' deposit accounts when a writ of attachment was served on July 9, 1982.[4] Once served, the writ—an order of the court—enjoined Mellon "from paying any debt to or for the account of Timothy Burno ... and from delivering any property owned by the [Burnos] to or for [their] account ... or otherwise disposing thereof." Writ of Fraudulent Debtor's Attachment, R. 21a–23a. The writ subjected Mellon as garnishee "to the mandate and injunctive orders" of the court. Pa.P.Civ.P. 3111(c).

■ Until Mellon was served with this process, it was not required to recognize Houghton's alleged adverse claim to the Burno deposits. Section 606 of the Banking Code describes the only way a third-party claimant may effectively establish ownership of funds held by a bank. 7 Pa.S.A. § 606(a)(i). Until the § 606 requirement is satisfied, a bank is protected in treating the deposit as that of the depositor.

4. In its July 8, 1982 letter to Mellon requesting that Mellon freeze the Burnos' accounts, Houghton wrote that it would "defend, indemnify and hold harmless [the bank] ... from and against any and all losses, liability and expense" arising out of the bank's compliance with Houghton's request. We note, however, that this letter does not qualify as the "bond, in form and amount and with sureties satisfactory to the institution" mandated by 7 Pa.S.A. § 606(b)(ii).

Notwithstanding this statutory protection, Houghton asserts that Mellon's set-off prior to service of the writ of attachment was an illegal conversion. Houghton argues that "if a bank has knowledge, or notice of facts enough to put it upon inquiry, that the funds in a depositor's account actually belong to a third person, it may not apply such funds to a debt owed to it by the depositor individually." *Sherts v. Fulton Nat'l Bank,* 342 Pa. 337, 339, 21 A.2d 18 (1941). *See also Middle Atlantic Credit Corp. v. First Pennsylvania Banking & Trust Co.,* 199 Pa.Super. 456, 185 A.2d 818 (1962); *Rodi Boat Co. v. Provident Tradesmens Bank & Trust Co.,* 236 F.Supp. 935 (E.D.Pa.1964). We point out that the cases cited by appellant were decided before the enactment of our current Banking Code in 1965, and for that reason alone may not be applicable here. *See* 7 Pa.S.A. §§ 101 *et seq.*

However, Houghton asserts that the current provision regarding notice of adverse claims is substantially the same as that in the earlier Banking Code. *See* 7 P.S. § 819–905A (repealed).[5] Even assuming that the statutory law regarding adverse claims is the same now as it was prior to 1965, a close reading of the line of cases cited by Houghton shows that they remain easily distinguishable from our present set of facts.

For example, in *Sherts,* the court held that a bank improperly applied funds in a depositor's account against the bank's outstanding loan, where the accounts were held by the depositor—an attorney—*for the benefit of his clients.* An account was listed under the name "H. Edgar Sherts, Attorney," and only collections made by him for clients were placed in the account. In other words, the account did not belong to the

5. The former statute read in pertinent part:

"Notice to an institution of an adverse claim to a deposit standing on its books to the credit of any corporation or person shall not be effectual to cause such institution to recognize such adverse claimant, unless such adverse claimant shall also procure either an attachment or a proper restraining order against the institution from a court of competent jurisdiction...., or unless he shall execute to the institution, in form and with sureties acceptable to it, a bond indemnifying the institution from any liability, loss, damage, costs, and expenses on account of the payment of such adverse claim...." 7 P.S. § 819–905A (repealed).

named depositor, but to others for whom it was held in trust, under a "fiduciary" or "agency" relationship. This type of account was held not to be available to the bank for payment of debts owed by Sherts *individually*.

Similarly, another account held by Sherts was listed as the "Farm Account," which held funds belonging to a decedent's estate. The court held that although the name of this account did not clearly denote a fiduciary relationship, the bank still could not set off against it. The court reasoned that Sherts had not attempted to mislead the bank as to the true ownership of the funds, and that the bank therefore could not avoid treating it as money held in trust for Sherts' client. The claims asserted by Sherts' clients against the bank were not "adverse" to Sherts himself, as he never pretended that the money was his own. *See also Ryan Bros. Inc. v. Curwensville State Bank*, 382 Pa. 248, 114 A.2d 178 (1955) (bank could not set off depositor's debt against funds in "Distribution Accounts" held by depositor for disbursement to third parties).[6]

Cases which prohibit set-off by the bank are inapplicable to the circumstances of this appeal. This appeal does not involve deposit funds held for the benefit of a third party, in a trust, fiduciary or agency context. *Cf. Sherts, supra; Ryan, supra.* Nor was this a case where the bank applied deposit funds against a defaulted loan which had been extended indepen-

---

6. Likewise, *Middle Atlantic Credit Corp., supra*, is distinguishable from this case. It involved the accounts receivable of an insolvent debtor in which a creditor held a security interest. The funds were traced into the debtor's deposit account at defendant bank. The court held that the bank was not permitted to apply the funds in the account against an unrelated loan owed by the debtor-depositor. In addition, the set-off occurred one day after the depositor filed for bankruptcy. Most significantly, the bank in *Middle Atlantic* did not make its loan to the depositor on the strength of the deposited funds as collateral.

Nor was the subject deposit account the collateral for the bank's loan in *Rodi Boat, supra*. The bank lent $56,250 to the depositor, who *later* placed $60,000 of proceeds from the sale of a boat into an account. The depositor had not finished paying the previous owner for the boat, however, and when the previous owner sought to recover the funds from the bank, the bank set off the depositor's separate, unrelated debt. The federal district court held that such set-off was not permitted. Neither of these cases relied on or even mentioned the relevant section of the Banking Code.

dently of the deposit accounts. *Cf. Middle Atlantic Credit Corp., supra; Rodi Boat, supra.*

Instead, in this case the bank relied on the representations of the depositors who affirmatively misled the bank into believing that certain stolen funds actually belonged to them. The bank lent them money based on the pledged funds as collateral and changed its position "in reliance on the apparent ownership of the funds so as to raise superior equities in its favor." *Sherts,* 342 Pa. at 340–41, 21 A.2d at 20. *See Cochran v. Fox Chase Bank,* 209 Pa. 34, 58 A. 117 (1904) (bank did not have to return stolen funds to true owner where bank accepted funds in good faith and in ordinary course of business as security for loan made to thief-depositor).

Although the cases cited by Houghton are distinguishable, we base our decision upon the clear language of section 606 which provides protection to Mellon in this case. The law provides that a bank which recognizes an alleged "adverse claim" to actual ownership of the account where no order or bond has been served does so at its own risk. *See, e.g., DeLuca v. Fidelity Bank,* 282 Pa.Super. 365, 422 A.2d 1159 (1980) (bank is legally obligated to honor request of customer in whose name account is held, despite adverse claim by wife, where there is no notice under § 606); *First Nat'l Bank of Lancaster County v. Lefever,* 28 D. & C.3d 214 (Lancaster Cty.1983) (bank need not recognize adverse claim to deposit account where requirements of § 606 were not met). Where such an adverse claim is made, the Banking Code requires that the claimant provide something more than mere "notice" of the claim; a letter purporting to advise the bank of the alleged claim is not sufficient under the statute.

Section 606 clearly and unambiguously defines the type of notice that is effective to prevent set off or other action by the bank. Until the prescribed notice is provided, the bank safely may presume that monies belong to the named depositor, and act accordingly. In this case, Mellon was not precluded from treating the funds in the Burnos' accounts as belonging to the Burnos until actual service of the writ of attachment. Mellon's set-off to pay down the Burnos' defaulted loan was not an

illegal conversion of the stolen funds as Houghton alleges. The loan agreement between Mellon and the Burnos permitted the bank to make itself whole out of the Burnos' funds on deposit with Mellon. Until Mellon received section 606 notice, Houghton's right to the funds was not superior to Mellon's.

Order affirmed.

CAVANAUGH, J., files a dissenting opinion.

CAVANAUGH, Judge, dissenting:

I respectfully dissent from the result reached by the majority because I do not believe that 7 Pa.S.A. § 606 allows a bank in which funds in an account are held to prefer itself over another claimant to an interest in the account. I would find that Mellon Bank acted improperly in attaching the funds in the Burno's account since it had actual knowledge of Houghton's claim to the funds prior to its own attachment.

I differ from the majority's analysis that cases decided before 1965 may not be applicable to resolution of the instant case since the current Banking Code was only enacted in 1965. The relevant current provisions and the former provisions, as quoted in the majority opinion, do not differ in any material respect from one another. Therefore, caselaw interpreting and applying the predecessor statute of current § 606 is relevant and binding authority upon the case before us.

Upon review of *Sherts v. Fulton National Bank*, 342 Pa. 337, 339, 21 A.2d 18 (1941); *Middle Atlantic Credit Corp. v. First Pennsylvania Banking & Trust Co.*, 199 Pa.Super. 456, 185 A.2d 818 (1962), and *Rodi Boat Co. v. Provident Tradesmens Bank & Trust Co.*, 236 F.Supp. 935 (E.D.Pa.1964), I would conclude that Mellon Bank is not entitled to the protection provided by § 606 where its own claim to funds held by it was at issue rather than Mellon's being a mere stakeholder and a disinterested party. I do not agree with the majority that these cases are distinguishable, nor do I see any legal reason to distinguish them since their holdings reflect proper disposition of the banks' claims to a right to setoff. Although § 606, or its predecessor statute, may not have been explicitly

mentioned, I would find that § 606 is not applicable where a bank attaches deposits in furtherance of its own claims to the funds, as opposed to protection of itself from competing third-party claimants.

I would reverse the order granting summary judgment and remand the case for further proceedings.