## Philadelphia *v.* Heinel Motors, Inc., Appellant, et al.

494

Argued November 21, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*B. D. Oliensis,* with him *J. H. Wagner, Jr.,* for appellant.

*Abraham L. Shapiro,* with him *Abraham Wernick,* Assistant City Solicitors, and *Francis F. Burch,* City Solicitor, for appellee.

OPINION BY STADTFELD, J., December 18, 1940:

This is a proceeding in equity, brought by the city of Philadelphia against the defendant corporation and its President individually. The pleadings consist of a bill in equity, preliminary objections filed by the defendants separately, and separate answers to the bill filed by each of the defendants.

The matter was tried before FINLETTER, P. J., on the 27th, day of September, 1939, who entered a decree in favor of the City of Philadelphia against the corporate defendant directing it to account for certain sums, being the amount of tax at 2% on the gross retail sales made by the defendant corporation within the month of March, 1938.

On February 8, 1938, council of the city of Philadelphia enacted an ordinance known as the Sales Tax Ordinance, by which a tax at the rate of 2% was imposed on every sale of property at retail made in the City of Philadelphia. The ordinance defined a sale as a transfer of title or possession or both, in any manner or by any means whatsoever for a consideration. It also provided that all sales made are subject to the tax until the contrary is established.

The vendor at retail of merchandise was required to make a return at stated intervals, showing the amount of retail sales and to pay the tax imposed thereon to the city of Philadelphia at the time the return was made.

The defendant made the return, showing taxable sales of $23,871.09 on which it paid the tax. The plaintiff alleged that the defendant had, in fact, made sales at retail aggregating a much greater amount and it was therefore liable to the city for the difference. The bill in equity prayed for an accounting, a decree declaring the defendants to be trustees to the extent of the taxes shown to be in their hands and an injunction restraining them from commingling the taxes received by them with funds belonging to them.

Preliminary objections, asserting that the plaintiff had an adequate remedy at law and was not entitled to the relief sought, were dismissed. Thereafter, an answer was filed on the merits, admitting that sales of $45,056.26 had been made, but averring that this figure was a bookkeeping figure and that the real sales prices of the automobiles and other merchandise sold at retail was the sum returned, the difference being abatements and allowances made to purchasers of new cars as an inducement to purchase the said new cars and to turn over to the defendant corporation used cars. It was averred that the defendant was required to collect only a 2% tax on the smaller amount.

At the trial of the case, the plaintiff called as for cross-examination, one Elmer W. Heinel, secretary and general manager of the corporate defendant. He testified that the used automobiles accepted as "trade-ins" by the defendant corporation were turned in as a bonus or gratuity in consideration of the discount allowed to the customers on the purchase price of new cars and that the sum of $477.42 collected as tax was remitted by the defendant to the city; that 60% of their total sales were made on the instalment plan.

Thereafter, on December 13, 1939, the chancellor filed findings of fact, conclusions of law and a discussion, together with an adjudication and a decree nisi, in which he held that the tax should be computed on the sales price of the cars sold by the corporation with-

out any deduction for the value of "trade-ins" and declared the defendant corporation a. trustee to the extent of the tax shown to be in its hands.

Exceptions were filed to the chancellor's findings of fact, conclusions of law and the decree nisi which, after argument, were overruled. A written opinion was filed by FINLETTER, P. J., and a final decree entered on May 6, 1940, directing the payment of the sum of $690.66 by the defendant corporation to the city, plus penalties and interest and holding the defendant as trustee in said amount and enjoining it from commingling the funds so impressed with the trust with its own funds. Costs were imposed on the defendant. This appeal followed.

There is no substantial dispute as to the facts in this case. The question of law discussed by the chancellor is stated by him as follows: "This question arises: Where a retail vendor of merchandise accepts tangible personal property as part payment for merchandise sold by him, is the tax imposed by the sales ordinance to be computed on the basis of the full sales price or on the basis of the cash difference between the sales price and the allowance made for the personal property taken in trade?"

He answered it by his 9th conclusion of law as follows: "9. The corporate defendant herein is therefore liable to the City of Philadelphia for the tax imposed by the ordinance on the total sales made by it, the amount of said sales being computed on the sale price of the automobile sold, whether payment therefor was made in full in cash or partly by allowance for a used car."

The ordinance under which the tax is imposed, defines sale as "any transfer of title or possession or both, exchange or barter, license to use or consume, conditional or otherwise, in any manner or by any means whatsoever for a consideration . . . . . ."

The ordinance also contains the following provision (Section 2) : "For the purpose of the proper administra-

tion of this ordinance and to prevent evasion of the tax hereby imposed, it shall be presumed that all sales and services mentioned in this section are subject to the tax until the contrary is established, and the burden of proving that a sale or service is not taxable hereunder shall be upon the vendor or the purchaser ......"

The Supreme Court of Pennsylvania has held in *Blauner's Inc., et al. v. Philadelphia et al.*, 330 Pa. 342, 345, 198 A. 889, that the tax imposed by this ordinance is not a tax upon the vendor, but upon the purchaser, saying: "It is equally plain that the sales tax does not duplicate the incidents of the Corporate Net Income Tax Act ...... The sales tax and the net income tax vary widely. The former is an excise tax on sales and services; the latter is a property tax upon income from any source ...... The persons taxed are wholly different. The sales tax is imposed on the purchaser or consumer; ......" The tax being a tax on the purchaser measured by the amount of the purchase, it is clear that the medium of payment agreed upon is immaterial. In other words, when the dealer in automobiles sells two new automobiles, each for the same price, accepting (a) cash from one customer for the automobile, and (b) personal property at an agreed valuation from another customer, either in complete or partial payment of the purchase price, both purchasers ought to pay the same amount of tax since they are buying identical merchandise and have agreed to pay the same price.

Appellant contends that the effect of the decision of the court below is to impose double taxation. We find no merit in this contention. The tax is imposed on the purchaser, computed on the amount he has agreed to pay. The dealer is not required to pay any tax since the ordinance only imposes on him the duty to collect from the purchaser, nor is the dealer required to pay any tax on the purchase of the new automobile acquired by it in this transaction since it has purchased the same

for resale. When the defendant corporation proceeds to sell the car accepted by it in trade to a new purchaser, the latter enters into a totally distinct and separate transaction and is chargeable under the ordinance with the tax on the purchase made by *him*. In each instance, the tax has been levied upon the particular transaction with the respective purchaser.

Double taxation has been defined to be the imposition of the same tax, by the same taxing power, upon the same subject matter: *Com. v. Harrisburg Light & Power Co.*, 284 Pa. 175, 179, 130 A. 412.

Tested by this definition, it is obvious that the tax which the dealer collects from the first customer in example (b)—the trade-in transaction—has for its subject the privilege of purchasing the new car and is measured by the price paid therefor. When the used car taken in exchange by the dealer is sold to another purchaser and the tax collected, it is obvious that the tax is imposed under the ordinance on the purchaser of the used car measured by the price which he pays therefore. The subject matter of the tax is entirely different; the transaction on which it is imposed is different so that it cannot be said that there is double taxation under these circumstances.

This construction has been followed in California, Illinois, Michigan and Missouri. In Missouri, when this question arose, the taxing statute defined a sale as a "transfer, exchange, or barter ...... of tangible personal property for a valuable consideration." It was contended that the acceptance of a trade-in automobile in part payment for the purchase price of a new automobile could not be taxed, one of the grounds of contention being that to impose the tax on the full sales price under such circumstances constituted double taxation. The Supreme Court of Missouri held in *State v. Hallenberg-Wagner Motor Co.*, (Mo.) 108 S. W. (2) 398, as follows: "The acceptance of a 'trade-in' automobile in part payment of the purchase price of an automobile

sold falls within the 'exchange or barter' provisions of said definition of 'sale', and is a 'valuable consideration' —a term broader than money or cash. Under Section 1, subsection (d) ' "gross receipts" means the total amount of the sale price of the sales at retail including any services that are a part of such sales made by the businesses herein referred to, capable of being valued in money, whether received in money or otherwise.' The phrase 'whether received in money or otherwise' applies to the preceding portions of the definition of 'gross receipts'. The 'trade-in' automobile is a valuable consideration, capable of being valued in money, its value standing agreed between the parties, and is within the meaning of the term 'otherwise' in said definition. And 'the total amount of the sale price above mentioned shall be deemed to be the amount received' (said subsection d); that is, whether received in money or otherwise. The cash payments constitute money received and the 'trade-in' automobiles constitute the 'otherwise' received. Under section 1, subsection (g), ' "sale at retail" means any transfer of the ownership of, or title to, tangible personal property to the purchaser ...... for a valuable consideration.' In each instance the title passes to the purchaser and for a valuable consideration—money or other property.

"Respondent's assault against the foregoing construction on the stated ground it results in double taxation confuses, we think, non-uniformity in taxation with double taxation. Respondent refers us to no constitutional prohibition against double taxation, and the cases relied upon ...... are only to the effect that double taxation is not favored and is not to be presumed; illegal double taxation occurring when a given subject of taxation contributes twice to the same burden while other subjects of the same class are required to contribute but once."

The tax should have been computed by the defendant upon the sales price of the automobile sold regardless

whether said sales price was paid in cash or in part by trade-in of a used automobile.

The appellant originally contended that under the ordinance and under general legal principles, the city could not, and in fact, did not impose a tax of 2% on the retail sales price of new cars but only on the balance remaining after deducting the allowance made for "trade-ins." Appellant now argues that because the ordinance provides that "the tax upon sales on the instalment plan shall be paid on the amount of each instalment and upon the date when such instalment is due" it follows that the decree could only go to the extent of compelling the defendant to account for the amount of the instalments paid to him during the month of March on sales made in that month.

Appellant states that Elmer W. Heinel, secretary of the defendant corporation, when called for cross-examination, testified that 60% of the total sales made during the month of March were on the instalment plan, on which no payments had been made during that month and none was due until April. It is stated that this testimony was uncontradicted and therefore the plaintiff is concluded because he is bound by the testimony of the witness since he has not contradicted it. It is true that Heinel did testify that 60% of the sales made during the month of March were instalment sales, but nowhere did he say that he got no money during the month of March. On the contrary, the contracts produced by him, exhibits P1 to 5 inclusive, showed that substantial credits had been given against the purchase price representing the value of the automobile traded in. It further appeared under the uncontradicted testimony in the instant case, that the defendant's records were not kept on the instalment basis.

The contention of the appellant that the testimony of Mr. Heinel, when called for cross-examination, was not contradicted and is therefore binding on appellee, is without merit. The records produced by the witness

and his own oral testimony completely contradict him, since the "trade-in" was in itself equivalent to a cash payment. From the testimony, it follows that either the tax was collected, regardless of whether the sale was made on the instalment plan or for cash, or should have been collected, and that the statement that only 40% of the sales were for cash, is without foundation.

The Supreme Court of our State having held in *Blauner's, Inc., et al. v. City of Philadelphia et al.*, supra, that the tax imposed under the ordinance is a tax on the purchaser and not on the seller and only the duty of collecting it from the purchaser is imposed on the seller, the latter is the agent of the city for collection. If he collected the tax in full from his purchaser on the assertion that it was due the city of Philadelphia, neither in law or morals is he entitled to retain it.

If the appellant had confined himself to the collection of a tax on each instalment, he would be justified in resisting the claim of the city of Philadelphia for any amount in excess of 2% of the instalments collected each month, but where, as here, collection is made on the entire sales price, or on what the vendor considers to be the entire sales price, he cannot defeat the city's claim that he pay over the tax so collected. He has no claim to the fund which would entitle him to retain it.

The receipt of the tax money by the vendor operates to create a constructive trust. In *Spencer v. Consumers Oil Co.*, 115 Conn. 554, 162 A. 23, it was held that a vendor of gasoline could not retain money collected by him under an unconstitutional gas tax; that such moneys constitute a trust fund which it held for the state. "Every person who receives money to be paid to another or to be applied to a particular purpose is a trustee, if so applied as well as when not so applied": *Vosburgh's Estate*, 279 Pa. 329, 332, 123 A. 813.

A constructive trust has been defined to be "a re-

lationship with respect to property subjecting the person by whom the title to the property is held to an equitable duty to convey it to another on the ground that his acquisition or retention of the property is wrongful and that he would be unjustly enriched if he were permitted to retain the property ...... a constructive trust is imposed not to effectuate intention but to redress wrong or unjust enrichment. A constructive trust is remedial in character." Restatement of the Law of Trusts, Vol. 1, p. 5, Chap. 1, section 1(e).

In Restatement of the Law, Restitution, Sec. 160, comment (d) p. 643, we find the following statement: "In most cases where a constructive trust is imposed the result is to restore to the plaintiff property of which he has been unjustly deprived and to take from the defendant property, the retention of which by him would result in a corresponding unjust enrichment of the defendant; ......"

Chief Judge CARDOZO shows the remedial character of a constructive trust in several cases decided by the Court of Appeals of New York. He said, "A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee: *Beatty v. Guggenheim Exploration Co.* 225 N. Y. 380, 122 N. E. 378. And in another case, he said: "A constructive trust is then the remedial device through which preference of self is made subordinate to loyalty to others": *Meinhard v. Salmon,* 249 N. Y. 458, 164 N. E. 545, 62 A. L. R. 1.

We quote from the case of *Interborough Consolidated Corp., Bankrupt,* decided in the United States Circuit Court of Appeals for the Second Circuit, reported in 288 F. 334, 347, 32 A. L. R. 932: "If A. places money in the hands of B., to be delivered to C., a trust arises

in favor of the latter. The acceptance of the money with notice of its ultimate destination creates a duty on the part of B. to devote it to the purpose intended, and a court of equity will enforce the trust. *McKee v. Lamson,* 159 U. S. 317, 322; 16 Sup. Ct. 11, 40 L. Ed. 165 ...... Every person who receives money to be paid to another, or to be applied to a particular purpose, to which he does not apply it, is a trustee, and may be sued either at law for money had and received, or in equity as a trustee, for a breach of trust. *Taylor v. Benham,* 5 How. 233, 274, 12 L. Ed. 130; *Kane v. Bloodgood,* 7 John Ch. (N. Y.) 110, 11 Am. Dec. 417."

In any event, whether the money was received or not, by the terms of the ordinance, all sales made by retail merchants are presumptively taxable sales until the contrary is established (Sec. 2 Sales Tax Ordinance).

In the case of In re *Atlas Television Co. Inc.,* 34 A B R (N. S.) 7, 273 N. Y. 51, 6 N. E. (2d) 94, LEHMAN, J., speaking for the highest court of the state of New York said: "It (the city) has provided that the vendor of property must pay the tax to it. Though the vendor is required, at least in most cases, to collect the tax from the purchaser 'for and on account of the city', the purpose of that provision is to place the incidence of the tax immediately on the consumer. The city can collect only from the vendor. *The vendor's obligation to pay the tax is not measured by the amount collected nor dependent upon failure to exercise the diligence in collection which would be required of an agent. It is an obligation measured by the receipts of the vendor and created by the local law.*" (Italics supplied).

From this it will be seen that the defendant's liability to pay the tax is absolute even though the tax is primarily on the customer and it is not necessary to establish negligence in collecting the tax in order for the city to maintain an action against the defendant to recover that which it should have collected.

Appellant contends that plaintiff was not entitled to

the equitable relief sought, and had an adequate remedy at law.

Under Section 4 of the ordinance in question, the vendor is required to keep records of receipts and of the tax payable thereon and under Section 5, to make returns of his sales and taxes payable thereon at certain periods. *Fischer v. Riehl*, 219 Pa. 505, 69 A. 70, it was held that a bill in equity against a principal for an account is cognizable in equity even though it is eventually determined that the substantial contest between the parties narrows down to a single item. This is especially so if the accounting involved is complicated and discovery is sought: *Crennell v. Fulton*, 241 Pa. 572, 88 A. 783.

We quote from the opinion of the chancellor in the instant case: "Coming now to the bases of equitable jurisdiction: There is ample basis for a prayer for discovery in the fact that the taxable transactions were entirely between the defendant and the customer, the City being in no position to know anything about the defendant's business or sales. The number of transactions, their diversity and the prices paid, were also entirely within the defendant's knowledge and not at all in plaintiff's. This situation renders an account from the defendant indispensable. By diversity of the transactions we mean that some sales were for cash entirely, some for payments in instalments, and some were partly barter and partly cash ...... The third ground for equitable jurisdiction is the status of the defendant as plaintiff's agent. This status is not disputed. Wherever, therefore, there is a conflict of duty between the agent and the principal, the former's duty in equity is to preserve and maintain the rights of the principal even at the expense of his own rights. In the instant case, payment was made to defendant by the purchaser on all sales, and in every case far in excess of the tax due. It was the agent's duty to its principal to allocate to the latter sufficient to pay the tax and look

506

to its customer for the collection of the balance of the purchase price if any was left unpaid."

We are entirely in accord with the views of the chancellor as quoted.

The assignments of error are overruled, and the decree affirmed at the cost of appellant.