In re The **GLOBE STORE ACQUISITION CO., INC., Debtor.**

**PENNSYLVANIA POWER & LIGHT COMPANY, Movant,**

v.

The **GLOBE STORE ACQUISITION CO., INC., Respondent.**

**BROADWAY THEATER OF NORTH-EASTERN PENNSYLVANIA INC., Plaintiff,**

v.

The **GLOBE STORE ACQUISITION CO., INC., Defendant.**

Bankruptcy No. 5–94–00148.
Adv. No. 5–94–00063A.

United States Bankruptcy Court,
M.D. Pennsylvania,
Wilkes–Barre Division.

Jan. 13, 1995.

Nicholas J. Lepore, Philadelphia, PA, for debtor.

Augustus Martin, Allentown, PA, for PP & L, movant.

Robert Cecchini, Dunmore, PA, for Broadway Theater, plaintiff.

## OPINION AND ORDER

JOHN J. THOMAS, Bankruptcy Judge.

Before the Court are actions against The Globe Store Acquisition Co., Inc., (hereinafter "Debtor"), by the Pennsylvania Power & Light Company, (hereinafter PP & L), and by the Broadway Theater of Northeastern Pennsylvania, Inc., (hereinafter "Theater"), seeking to impose a trust upon the Debtor so that funds in possession of the Debtor would be considered "trust funds" properly belonging to PP & L and the Theater.

There are factual differences in the relationship of PP & L and the Debtor when compared to the relationship of the Theater and the Debtor. Nevertheless, the resolution of the issues between the parties rests on a similar analysis of the impact of the law of trusts on this case.

Procedurally, PP & L filed a Motion for Relief from Automatic Stay in order to pursue the Debtor for funds in its possession.

Historically, on November 10, 1980, an agreement was entered into between the predecessor of the Debtor, The Globe Store, and PP & L, wherein the Globe Store would act as agent for PP & L. In its capacity as agent, the Globe Store was to receive payments for PP & L service bills from PP & L customers who chose to pay their utility bills in such fashion. The agreement went on to say, "It is understood that you will keep an accurate record of payments received and properly receipt customer's bills. Daily, you will transmit to our Allentown offices your collections, bill stubs and other pertinent information in accordance with mutually agreed upon remittance procedures." For this service, the Globe Store received a commission for each collection made.

The Globe Store, as well as its unrelated successor, the Debtor herein, operated a large department store in downtown Scranton, Pennsylvania. The department store apparently provided a convenience to shoppers so that they could pay their utility bills while they were downtown presumably doing shopping in the store.

Although the Globe Store was a predecessor to the Debtor, there was no express assumptions of any liabilities by the Debtor regarding the Globe Store's contracts that are relevant here, specifically the PP & L agreement. Nevertheless, the relationship between the parties continued on similar terms.

On a continuing basis, the Debtor received payment of PP & L invoices by checks made payable to "Pennsylvania Power & Light" as well as cash. The Debtor forwarded all PP & L checks directly to PP & L for endorsement and deposit. The cash received by the Debtor was deposited in its general operating account and then paid over to PP & L by Debtor's check. This was apparently the same procedure utilized by the predecessor Globe Store in its dealings with PP & L.

The Debtor, of course, argues that the commingled fund is property of the Debtor and disbursement of that property is governed by applicable provisions of the Bankruptcy Code. PP & L argues that the moneys received by the Debtor were trust funds and therefore belonged to the beneficiaries of the trust, i.e. PP & L.

The relationship between the Theater and the Debtor was slightly different. The Theater was an independent nonprofit institution that offered four theater productions to the public over the course of a given "season". These tickets could be purchased either at the Theater or at the Debtor herein. They could be purchased with cash, all major credit cards, or a Globe credit card (the Debtor's credit card). Within twenty-four (24) hours of the purchase of the tickets, the customer

would be mailed the tickets and, if the Globe credit card was used, the charge for the ticket would appear on the Globe department store statement to the customer. The Globe charge account required a minimal payment on a monthly basis with the balance accruing interest at the finance charge specified in the customer's contract with the Debtor. The account statement would reflect all purchases made by the customer over the previous month whether those purchases were normal department store purchases or the aforesaid theater tickets.

The Debtor agreed with the Theater to pay for total ticket sales arranged through the Globe credit card by making four payments annually with each payment made to the Theater shortly before the Theater required those funds for payment to the individuals appearing on stage. The Debtor did not charge the Theater any fees for this service but apparently retained the use of the customer's money together with whatever interest was paid until Theater payments were required. Detailed records of ticket sales were maintained by the Debtor although all funds received on account were deposited in the general operating account of the Debtor.

The Theater now seeks payment of One Hundred Thirty–Seven Thousand Five Hundred Twenty and 50/100 Dollars ($137,520.50) arguing that the Debtor held this fund "in trust" for the Theater since the Debtor retained only the legal title to the property and not the equitable interest under 11 U.S.C. § 541(d).

### DISCUSSION

We start from the well-settled principle that debtors do "not own an equitable interest in property ... [they] hold [ ] in trust for another," and that therefore funds held in trust are not "property of the estate." *Begier* [*v. Internal Revenue Service*], 496 U.S. [53] at 59, 110 S.Ct. [2258] at 2263 [110 L.Ed.2d 46 (1990) ]; see also 11 U.S.C. § 541(d); *Universal Bonding Ins. Co. v. Gittens & Sprinkle Enters.*, 960 F.2d 366, 371 (3rd Cir.1992). In general, "to establish rights as a trust recipient, a claimant must make two showings: (1) demonstrate that the trust relationship

and its legal source exist, and (2) identify and trace the trust funds if they are commingled." *Goldberg v. New Jersey Lawyers' Fund*, 932 F.2d 273, 280 (3rd Cir. 1991); *In re Columbia Gas Sys. Inc.*, 997 F.2d 1039, 1063 (3rd Cir.1993) ("beneficiaries of trust funds bear the burden of identifying and tracing their trust property"), cert. denied, —— U.S. ——, 114 S.Ct. 1050, 127 L.Ed.2d 372 (1994). Goldberg teaches that we look to state law to determine whether the claimant has shown a trust relationship, but that we look to federal law to determine whether the claimant has traced and identified the trust funds. *Goldberg*, 932 F.2d at 280; see also *Universal Bonding*, 960 F.2d at 369; *In re Markos Gurnee Partnership*, 163 B.R. 124, 129 & n. 4 (Bankr.N.D.Ill.1993); *In re Visiting Nurse Ass'n v. Bowen*, 143 B.R. 633, 641 (W.D.Pa.1992) ("Once a bankruptcy court makes a determination concerning whether a debtor has any legal or equitable interest in property based upon applicable state law, whether the property will come into the estate is federal question") (internal quotations and citations omitted), aff'd, 986 F.2d 1410 (3rd Cir.1993) (table). *City of Farrell v. Sharon Steel Corporation*, 41 F.3d 92, 95–96 (3rd Cir.1994).

▬ Under Pennsylvania Law, "every person who receives money to be paid to another or to be applied to a particular purpose is a trustee, if so applied, as well as when not so applied". *In re Vosburgh's Estate*, 279 Pa. 329, 332, 123 A. 813, 815 (1924).

"... [A] trust relationship exists when the parties manifest an intention to create a trust ... absent a document definitively establishing a trust relationship, we look to the language of the parties, their conduct, and other circumstances surrounding the transaction probative of their intent." *In re Columbia Gas Systems, Inc.*, 997 F.2d 1039, 1059 (3rd Cir.1993).

▬ The Debtor's relationship with PP & L was a continuation of a relationship that PP & L had with the Debtor's predecessor, the Globe Store. This Court finds that the agreement initiated in the relationship between PP & L and the Globe Store, the

predecessor company, continued to govern the relationship of PP & L to the Debtor, at least by implication.

PP & L customers would make checks payable to PP & L and would deliver them to the Debtor for transmittal to PP & L. The physical possession of the checks was delivered to the Debtor obviously with the intention to turn those checks over to PP & L. Those checks were in fact turned over to PP & L. The parties do not dispute this. At issue between the parties is whether the cash turned over by PP & L customers to the Debtor should also have been turned over to PP & L since, PP & L argues, only the legal interest to that fund was turned over to the Debtor and not the beneficial interest.

The Debtor, on a daily basis would make a check payable for all of its PP & L cash receipts to PP & L. Cash receipts from PP & L customers were commingled by the Debtor in its operating account. Commingling, while indicative of a Debtor/Creditor relationship, (*In re Columbia Gas Systems, Inc., Id.*) is not necessarily determinative. *Begier v. Internal Revenue Service*, 496 U.S. 53, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990).

> A resulting trust arises where a person makes or causes to be made a disposition of property under circumstances which raise an inference that he does not intend that the person taking or holding the property should have the beneficial interest therein, unless the inference is rebutted or the beneficial interest is otherwise effectively disposed of. *Restatement of the Law of Trusts 2d § 404.*

PP & L customers turned over cash to the Debtor with what this Court finds was the intention that this money be turned over to PP & L in payment of utility bills. The Debtor, on a daily basis, paid PP & L these bills without interest.[1]

This Court is satisfied that the relationship between PP & L and the Debtor was that of beneficiary and trustee respectively and, therefore, we will proceed to the second of the two "showings" required of the claimant to succeed with its request. That showing requires that the trust funds be "identified and traced" if they are commingled.

■ The record establishes that the PP & L cash receipts were deposited in the general operating account of the Debtor. There is no dispute as to the amount of money involved which has been agreed to be Fifteen Thousand Eight Hundred Seventy–Eight and 93/100 Dollars ($15,878.93). The Third Circuit has adopted what is known as the "lowest intermediate balance test". *In re Columbia Gas Systems, Inc., supra* at 1063. "The lowest intermediate balance rule, a legal construct, allows trust beneficiaries to assume the trust funds are withdrawn last from a commingled account. Once trust money is removed, however, it is not replenished by subsequent deposits. Therefore, the lowest intermediate balance in a commingled account represents trust funds that have never been dissipated and which are reasonably identifiable." *In re Columbia Gas Systems, Inc., supra at 1063.*

■ A review of the record indicates that the balance in the operating account of the Debtor fluctuated from approximately One Hundred Ninety Thousand Seven Hundred Nine and 98/100 Dollars ($190,709.98) to a balance of One Hundred Thirty–Three and 40/100 Dollars ($133.40) when an Eight Hundred Eight and 96/100 Dollars ($808.96) check was returned presumably for insufficient funds from the period of the last receipt of PP & L utility bills to the date of bankruptcy. This leads us to the conclusion that only nominal funds remained in the account to award to PP & L. Accordingly, PP & L's Motion for Relief from the Automatic Stay is granted so as to allow PP & L to pursue the Debtor to recover the sum of One Hundred Thirty–Three and 40/100 Dollars ($133.40).

■ The evidence concerning the Theater receipts represents a more amorphous relationship between the Debtor and the Theater.

The "settlor" of the alleged trust did not turn anything over to the Debtor except a

---

1. "Interest payments indicate a Debtor–Creditor relationship because they are usually contractually negotiated quid pro quo for a loan". *In re*

*Columbia Gas Systems, Inc.,* 997 F.2d 1039, 1061 (3rd Cir.1993).

promise to pay on his/her credit card in order to receive tickets for theater productions. Those ticket buyers received within 24 hours by mail or otherwise their tickets and were then obligated to pay for them on a monthly installment basis if they charged their bill on the Debtor's charge at the Debtor's standard interest charge. The ticket holder would have followed the same procedure had they utilized their own Mastercard, Visa or other acceptable credit card. In each case, the ticket holder was bound by the agreement it had with the card company.

The Debtor had an arrangement with the Theater that a proportion of total charges would be paid to the Theater on or before certain dates. These payments to the Theater were made without regard to the ticket holder's payments on the charge cards. The ticket holder's charge account would not only reflect the purchase of the tickets but any other charges made on the Debtor's charge card at that store.

Interest was paid by the ticket holder to the Debtor for extended payments. The Debtor paid no interest to the Theater nor was it obligated to pay interest to the Theater.

Although the Debtor understood that it was obliged to pay the Theater for the tickets that it financed, this obligation appears to be no different than the duties the Debtor would have to pay its other suppliers of merchandise.

The Theater argues that the Debtor's receipt of funds from the ticket holder created "a constructive trust".

"A constructive trust has been defined to be a relationship with respect to property subjecting the person by whom the title to the property is held to an equitable duty to convey it to another on the ground that his acquisition of the retention of the property is wrongful and that he would be unjustly enriched if he were permitted to retain the property ... a constructive trust is imposed not to effectuate intention but to redress wrong or unjust enrichment. A constructive trust is remedial in character." *City of Philadelphia v. Heinel Motors*, 142 Pa.Super. 493, 16 A.2d 761, 765–66 (1940) citing *Restatement of the Law of Trusts*, Vol. 1, p. 5, Chap. 1, section 1(e).

While we are mindful that an entity which receives something for no consideration, and not as a gift, is unjustly enriched, we are compelled to observe that if that were the only standard, then every creditor in every bankruptcy estate could claim to be the beneficiary of a constructive trust and therefore not subject to the distribution schedules outlined by the Bankruptcy Code.

"In general, Courts favor a prorated distribution of funds when such funds are claimed by creditors of like status". *In re Goldberg*, 932 F.2d 273, 279 (3rd Cir.1991).

"Cases granting one party distribution priority over the other depend upon definite proof that specific funds in an account have been traced". *Id.* at 280.

While the Theater argues that it has established "a constructive trust", even if this Court were so to find, it would still be required to find that the funds have been "identified and traced". While the PP & L customer made deposits specifically earmarked for PP & L bills which found their way into the general operating account of the Debtor that was specifically ascertainable, the Theater ticket holder made charge card payments, some portion of which were attributable to the purchase of tickets. Neither the ticket holder or the Debtor attempted to allocate the monthly payment received between the ticket purchase and the general department store purchases.

The evidence at trial indicated that of all purchases on the Globe Store department card, on the average five percent (5%) would remain unpaid. Although specific records were kept of which charge card holders charged ticket purchases, the records could not indicate, with specificity, which ticket holders fully paid for ticket purchases and which ones did not since charges were commingled.

Although we are sympathetic to the plight of the Theater, a nonprofit institution providing a community service to the people of the Scranton area, we cannot allow that consideration to influence the decision in this case. We therefore conclude that the funds paid by

the many ticket purchasers pursuant to the Debtor's charge account agreement were funds received as property of the Debtor's estate and not in trust for the benefit of the Theater. Attached is our Order.

### ORDER

The Motion for Relief from Automatic Stay filed by the Pennsylvania Power & Light Company is granted to allow PP & L to pursue the Debtor to collect the sum of One Hundred Thirty–Three and 40/100 Dollars ($133.40).

Moreover, judgment is entered in favor of Debtor and against the Broadway Theater of Northeastern Pennsylvania, Inc. on the complaint of the Theater.