J-A21010-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ESTATE OF PERCY D. KNAPPENBERGER ALSO KNOWN AS PERCY DONALD KNAPPENBERGER, DECEASED, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: JOSEPH KNAPPENBERGER, INDIVIDUALLY AND AS EXECUTOR OF THE ESTATE OF PERCY D. KNAPPENBERGER A/K/A PERCY DONALD KNAPPENBERGER, | |
| Appellant | No. 182 EDA 2014 |

Appeal from the Order Entered December 12, 2013
In the Court of Common Pleas of Lehigh County
Orphans' Court at No(s): 2010-1932

BEFORE:  BOWES, OTT, and STRASSBURGER,[*] JJ.

MEMORANDUM BY BOWES, J.:                    **FILED OCTOBER 08, 2014**

Joseph Knappenberger, both individually and in his capacity as the personal representative of the estate of his father Percy D. Knappenberger, appeals from an order entered on December 12, 2013.  In the order, the orphans' court imposed a constructive trust on a portion of the proceeds of a mortgage that Appellant secured on real estate that he inherited from his father.[1]  We affirm.

_____

[*]  Retired Senior Judge assigned to the Superior Court.

[1]  The order in question is a final one since it resolved the only outstanding request for relief pertaining to the estate.

Percy D. Knappenberger died testate on October 21, 2010. On December 1, 2010, the Register of Wills of Lehigh County admitted to probate his last will and testament dated October 1993. In the will, Gerald Woodring, decedent's brother-in-law, was named as the executor of the estate, and his wife Martha Woodring, decedent's sister, was named as the alternative executrix. Both Gerald, who died in 2011, and Martha, who is the Appellee in this matter, renounced their right to serve as personal representative of Percy's estate. Appellant, as his father's sole heir under the will, was appointed administrator c.t.a.[2] The last advertisement of the opening of the estate occurred on July 28, 2011. The net value of the estate, after payment of administrative expenses and debts, was approximately $165,000.

On May 8, 2012, Martha filed a timely notice of claim against the estate in the amount of $30,410.37. She contended that the estate owed her that amount based upon a loan that she and Gerald had made to Percy. The following document evidenced the loan in question:

TO WHOM IT MAY CONCERN!

MONEY LOANED TO PERCY FROM 12/9/2002 TO PRESENT

PER PHONE CONVERSATION TODAY WITH PERCY, THIS IS VERIFICATION THAT I, GERALD C. WOODRING, HAVE BEEN

---

[2] These letters are an abbreviation for the Latin term *cum testament annexo.* The term is employed when the decedent leaves a will and either neglects to name a personal representative, or the named executor or executrix is unable or unwilling to serve.

PAYING PERCY'S BILLS AS NEEDED, FROM MY HOME EQUITY LOAN TO KEEP HIM FROM LOOSING [SIC] EVERYTHING THAT HE HAS BEEN WORKING FOR THE PAST FORTY PLUS YEARS. LISTED BELOW IS THE AMOUNT, NOW OWED ME OR MY WIFE, NOT INCLUDING INTEREST FOR USE OF MONEY! $30,410.37

Notice of Claim, 5/8/12, at Exhibit 1.  Both Percy and Gerald executed this document, which also was notarized.

On October 26, 2012, Martha filed a petition for citation to show cause why an accounting should not be filed.  In his answer to the petition, Appellant denied that Percy owed Martha any money since, under the document in question, Percy never agreed to repay that amount and, instead, merely acknowledged receipt of the funds.  In his new matter, Appellant raised the defense that the four-year statute of limitations had expired for collection of the loan.

After the citation was issued, the matter proceeded to a hearing, and the parties filed countervailing proposed findings of fact and conclusions of law.  Appellant argued that the April 24, 2004 document was not an enforceable debt since it did not contain an unconditional promise by Percy to pay back the loan to Gerald.  Appellant also asserted that a four-year statute of limitations applied to any debt collection and prevented Martha from prevailing in her action against the estate.

Martha raised counter-arguments as to why the April 24, 2004 writing evidenced a still-enforceable debt. She also maintained that a constructive trust should be imposed on either Percy's probate assets or on the proceeds

of any probate assets then held by Appellant. Proposed Findings of Fact and Conclusions of Law, 5/13/20, ¶ II (6). She presented argument and legal authority on the doctrine of constructive trusts. *Id*. at 10. Martha also averred:

10. Respondent/Defendant induced Martha C. Woodring and Gerald C. Woodring to renounce their appointment as executors of Decedent's estate in return for a promise that the Debt would be paid by the Respondent/Defendant and/or the Decedent's estate.

11. Martha C. Woodring relied upon Respondent/Defendant in agreeing to renounce her position as executor.

*Id*. at ¶ I (10-11).

In a pre-hearing memorandum, Martha again raised the position that a constructive trust should be imposed against Appellant, and amended her petition for citation to include an allegation that she was owed the money outlined in the notice of claim under a theory of constructive trust.

Hearings were held on September 3 and 4, 2013. The evidence viewed in the light most favorable to Martha, as the prevailing party, is as follows. During his lifetime, Percy was loaned $30,410.37 by his sister Martha and Martha's husband Gerald. June Kinek, Percy and Martha's sister, testified that Martha showed her the April 24, 2004 document executed by Percy. Ms. Kinek also had discussions with Percy about his financial situation. Percy told her, "[H]e was having a hard time at different times in his life. He was laid off, . . . and he was out of jobs and looking for jobs and, of course, his – his financial situation suffered." N.T. Hearing, 9/4/13,

at 9. Percy also admitted to June that "he had a paper signed and that he owed Martha and Gerald $30,000." *Id*. at 110. Percy acknowledged the debt on several other occasions. *Id*. One time, Ms. Kinek overheard Percy speaking with her husband, and Percy said that "he wanted to pay Martha and Gerald the $30,000, but he just didn't have the money to do it." *Id*. at 16. Ronald Kinek, June's husband, also verified that this conversation occurred.

The primary asset of the estate was Percy's home, which was valued at $230,000. Appellant received that asset after re-financing the existing mortgage on the house. At the hearing, it was established that Appellant reported to his loan officer that he owed Martha $30,000. Specifically, Appellant told the loan officer, Ronald Gildner, that his intention in obtaining the mortgage "was to pay off any debts that his dad had, that being the mortgage, a loan to Martha and funeral debts." N.T. Hearing, 9/3/13, at 10.

Mr. Gildner retained a handwritten list of the liabilities that Appellant represented to Mr. Gildner that Appellant intended to satisfy with the loan proceeds. Mr. Gildner's list included a notation that $30,000 was to be distributed to Appellant's Aunt Martha. Additionally, Appellant gave the loan officer a printout of the debts that he planned to pay with the proceeds of the mortgage; one of the entries on the printout was "Martha $30,000." *Id*. at 12. Mr. Gildner indicated that a mortgage was given to Appellant for $155,000, that it was secured by the real estate that Appellant inherited

from his father, and that a portion of the proceeds of the loan were distributed to Appellant with the remainder sent to satisfy the outstanding mortgage on the property.

Martha confirmed that she was told by Appellant that the mortgage proceeds would be used to pay the debt owed by Percy to her and her husband. She testified as to the circumstances of that discussion. As noted, Gerald and Martha were supposed to be the personal representatives of the estate. Gerald was ill and unable to serve in that capacity and executed a renunciation. Although she was the alternative personal representative and capable of performing that role, Martha also executed a renunciation. Martha reported that, during discussions about her and her husband renouncing, she and Appellant discussed the existing financial situation among Percy, Martha, and Gerald. At that time, Appellant told her that he would "redo the mortgage and pay bills; one of them would be to pay his Aunt Martha." N.T. Hearing, 9/4/13, at 45.

During argument at the hearing, Martha contended that Percy's estate was contractually obligated to repay the debt to her or, in the alternative, that Appellant owed her the money pursuant to a constructive trust that should be imposed on the mortgage proceeds. *Id*. at 52-54, 107. Appellant took the position that the April 24, 2004 document was not a contractual obligation since there was no promise to pay. He also raised the defense of

the statute of limitations under 42 Pa.C.S. § 5525, which contains the four-year statute of limitations applicable to contracts.

On December 12, 2013, the orphans' court rendered its ruling. It concluded that the April 24, 2004 document was unenforceable as a promissory note since it contained no express promise to pay on the part of Percy and was merely an acknowledgement of the debt. 13 Pa.C.S. § 3104.[3] It also concluded that, even if the document contained a promise to pay a debt, Martha's claim was barred by the applicable four-year statute of limitations.

The orphans' court, however, accepted Martha's position as to Appellant and imposed a constructive trust for her benefit on $30,410.37 of the proceeds of the mortgage retained by Appellant. Appellant did not file optional exceptions to the orphans' court's decision, and instead, filed this direct appeal. Appellant raises these contentions.

> I. After denying the claim of Martha Woodring as unenforceable and time barred, did the trial judge commit error when he nevertheless directed Joseph Knappenberger, in order to prevent his unjust enrichment, to pay Martha Woodring the amount of her claim pursuant to a constructive trust that he imposed upon a portion of the funds Joseph Knappenberger had received in May, 2011 from the refinance of the home he inherited from his father.

_____

[3] With additional requirements not here relevant, that section defines a negotiable instrument and provides that such a document consists of "an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order[.]" 13 Pa.C.S. § 3104(a).

II. Under the facts of this case, is the imposition of a constructive trust barred by the five year statute of limitations?

III. Under the facts of this case, is the imposition of a constructive trust barred by the doctrine of laches?

Appellant's brief at 7.

Initially, we outline the applicable standard of review.

> When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion. However, we are not constrained to give the same deference to any resulting legal conclusions. Where the rules of law on which the court relied are palpably wrong or clearly inapplicable, we will reverse the court's decree.

*In re Estate of Fuller*, 87 A.3d 330, 333 (Pa.Super. 2014) (citation omitted).

A constructive trust is defined as "a relationship with respect to property subjecting the person by whom the title to the property is held to an equitable duty to convey it to another on the ground that his acquisition or retention of the property is wrongful and that he would be unjustly enriched if he were permitted to retain the property." *City of Philadelphia v. Heinel Motors*, 16 A.2d 761, 765 (Pa.Super. 1940) (quoting Restatement (First) of the Law of Trusts, § 1(e)). Such a trust is imposed to redress a wrong or prevent unjust enrichment and is remedial in nature. Thus, "when relief through imposition of a constructive trust is prayed for, it is not the specific intent between the parties to create a constructive trust

but rather whether or not imposition of a constructive trust is necessary to prevent unjust enrichment." ***DePaul v. DePaul***, 429 A.2d 1192, 1194 (Pa.Super. 1981).  This principle is echoed in the pertinent provisions of the Restatement of Trusts, which discusses constructive trusts in comment to § 1, as follows:

> A constructive trust is a relationship with respect to property usually subjecting the person by whom its title is held to an equitable duty to convey the property to another on the ground that the title holder's acquisition or retention of the property is wrongful and that unjust enrichment would occur if the title holder were permitted to retain the property.  ***See*** Restatement of Restitution § 160 ["Where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it, a constructive trust arises."] . . .
>
> Both express trusts and resulting trusts are based upon an intention of the person who creates them. . . .  On the other hand, a constructive trust is imposed, not necessarily to effectuate an expressed or implied intention, but to redress a wrong or to prevent unjust enrichment.  A constructive trust is thus the result of judicial intervention and is remedial in character.

Restatement (Third) of Trusts § 1.  Pennsylvania principles applicable to constructive trusts are consistent:

> A constructive trust arises when a person holding title to property is subject to an equitable duty to convey it to another on the ground he would be unjustly enriched if he were permitted to retain it.  The necessity for such a trust may arise from circumstances evidencing fraud, duress, undue influence or mistake.  The controlling factor in determining whether a constructive trust should be imposed is whether it is necessary to prevent unjust enrichment.  One who seeks the imposition of a constructive trust must do so by clear, direct, precise and convincing evidence.

***Hercules v. Jones***, 609 A.2d 837, 841 (Pa.Super. 1992) (citation omitted). The constructive trust is the means by which a wrong is redressed.

We conclude that the orphans' court did not abuse its discretion in imposing a constructive trust herein. On April 24, 2004, Percy acknowledged that he had received $30,410.37 from Martha and Gerald "to keep him from loosing [sic] everything that he has been working for the past forty plus years." Notice of Claim, 5/8/12, at Exhibit 1. In other words, Appellant would not have had a house to inherit if his aunt and uncle had not given Percy the money in question. Thus, Appellant obtained a house, in the first instance, only through the generosity of Martha and Gerald. This debt was openly acknowledged by Percy, who wanted to repay it.

Then, Appellant verbally and in writing admitted that the money was owed. Appellant told his loan officer and Martha that he would repay the debt from the proceeds of the mortgage. Martha renounced her right to serve as executrix after discussions with Appellant wherein he represented, as administrator c.t.a., that he would mortgage the house and repay her the money that Percy owed. Then, after acknowledging and promising to pay the debt from the mortgage proceeds, Appellant retained the money that he was entitled to receive only due to the loan made by Martha and Gerald.

A clear wrong was committed that must be redressed through equity. Appellant would be unjustly enriched by the retention of the $30,410.37 from the mortgage proceeds. That amount enabled his father to retain

ownership of the asset that was used to secure the loan upon which the constructive trust was imposed. The court's application of the doctrine in question is unassailable.

Appellant's first claim is that a constructive trust was improperly imposed in this case since "imposition of a constructive trust is appropriate only where the defendant has **no right whatsoever** to the property he holds in violation of the Plaintiff's rights." Appellant's brief at 17-18 (emphasis in original). Appellant notes that he legally owned the real estate in question and that he was entitled to mortgage it as its owner. *Id*. at 19.

Appellant's argument is misguided and confusing. The constructive trust doctrine provides that property legally owned by one person can be subject to a constructive trust. The fact that Appellant "legally owned" his house and was "legally entitled" to the mortgage proceeds simply does not prevent application of the constructive trust doctrine; indeed, that ownership scenario is precisely when the doctrine applies. A constructive trust is imposed when a person legally owns property but would be unjustly enriched by its retention. It is employed when the person in question has a legal but not a just right to the property.

Appellant also appears to argue that a constructive trust must be imposed on all rather than some of the property at issue. In other words, he claims that it was impossible to impose a constructive trust on only a portion of the property in question. We find no support in applicable precedent for

this principle. As noted, the entire focus of the constructive trust doctrine is whether a person possessing certain property would be unjustly enriched by its retention. It is clear that Appellant was unjustly enriched from the mortgage proceeds only by the sum of $30,410.37.

Not only is Appellant's position in this respect unsupported by reference to legal authority, it is refuted by the equitable and remedial nature of the doctrine itself. As we aptly stated in **Kohr v. Kohr**, 413 A.2d 687, 690 (Pa.Super. 1979), "a court of equity in decreeing a constructive trust is bound by no unyielding formula. The equity of the transaction must shape the measure of relief." This precedent clearly dispels any notion that a constructive trust cannot be imposed upon a portion of assets received by the unjustly enriched person.

Appellant also maintains that the "evidence fails to support the trial judge's conclusion that without the loan Percy Knappenberger would have lost his home in foreclosure." Appellant's brief at 20 (quotation marks omitted). We disagree. The orphans' court's finding in this respect is firmly premised upon the very language of the April 24, 2004 document. Therein, Percy admitted that he would have lost everything that he owned had he not received the loan in question. The property that Percy owned included the house inherited by Appellant. While Appellant points to the fact that there were never any foreclosure proceedings, this argument does nothing more than reinforce the strength of Martha's case. The fact that no mortgage

foreclosure proceedings were instituted was the result of her and her husband's generosity to Percy when he was experiencing financial difficulties.

Appellant's second contention is that the imposition of the constructive trust was barred by the five-year statute of limitation. He relies upon 42 Pa.C.S. § 5526(3), which provides, "The following actions and proceedings must be commenced within five years . . . [a]n action to enforce any equity of redemption or any implied or resulting trust as to real property." The statute in question applies to constructive trusts. **Truver v. Kennedy**, 229 A.2d 468 (Pa. 1967). However, Appellant did not raise § 5526 as the applicable statute of limitations to the trial court.

Even if he had, it would not bar this action. Martha took two positions herein. The first was against Percy's estate in that she claimed that the loan was still legally enforceable. The second cause of action was against Appellant personally. She averred that a constructive trust was created as to Appellant upon his receipt of the mortgage proceeds. Thus, the constructive trust did not come into existence until Appellant received the house, mortgaged it, and did not pay Martha the money that his father used to retain ownership of the house, and that Appellant openly promised to pay to both Mr. Gilbert and his aunt. These activities occurred in 2010 and 2012. The constructive trust in question was imposed on December 12, 2013, well within the five-year period. Thus, this action is timely as to the

activities that formed the basis for the equitable cause of action seeking a constructive trust against Appellant.[4]

Appellant's final position is that the doctrine of laches barred the imposition of a constructive trust. This issue is waived. The defense of laches was not raised in the pre-trial or trial proceedings. Appellant was fully apprised of Martha's alternative theory of recovery under the doctrine of constructive trusts during pre-hearing proceedings, and had ample opportunity to present this issue to the orphans' court. It is settled that issues that are not raised in the trial court cannot be raised for the first time on appeal and are considered waived. ***Green v. Green***, 69 A.3d 282, 286 (Pa.Super. 2013); Pa.R.A.P. 302(a).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/8/2014

_____

[4] This Memorandum should not be read to allow the imposition of a constructive trust whenever a legal claim would be barred by the statute of limitations. The instant facts are *sui generis*.

- 14 -